## THE JEFFERSONVILLE RAILROAD COMPANY *v.* ROGERS.

CARRIER.—*Railroad.*—*Negligence.*—*Ticket.*—If a passenger on a railway train, before entering the car, properly applies at the ticket office of the agent of the company for a ticket, and, without fault on his part, but from either the wilfulness or the mistake or inadvertence of the ticket agent, is unable to procure one, he, when, according to the rules of the company, fare in addition to the price required to purchase a ticket is demanded of him by the conductor on the cars, may pay, under protest, the excess demanded, and afterward by suit recover it back; but he is not obliged to do so; on the contrary, he is entitled to be carried at the ticket rate without paying the excess demanded, and has the choice of paying the excess, or of insisting upon his right to be carried at the ticket rate and holding the company responsible in damages for a refusal to carry him.

SAME.—*Damages.*—If, when insisting upon his right, in such case, to be carried at the ticket rate, the passenger is by the conductor of the train expelled from the car in a spirit of oppressive malice or wantonness, he is entitled to recover exemplary damages against the company, a verdict for which damages an appellate court will rarely set aside for excess merely.

SAME.—In such case, the passenger wrongfully expelled from the cars may be entitled to exemplary damages by reason of the time, place, circumstances, and manner of his expulsion, though no harsh or unnecessary means were resorted to in order to effect his expulsion.

AGENT.—*Tortious Acts of.*—*Corporation.*—A corporation is liable for the wilful acts and torts of its agents committed within the general scope of their employment, as well as for their acts of negligence, though such particular acts were not authorized or ratified.

APPEAL from the Bartholomew Circuit Court.

WORDEN, C. J.—This was an action by Rogers against the appellant to recover damages for the wrongful expulsion of

The Jeffersonville Railroad Company *v.* Rogers.

the plaintiff, by the agent of the defendant, from one of her railway carriages. The cause has once been in this court, and a former judgment recovered by the plaintiff was reversed. 28 Ind. 1. On a subsequent trial the plaintiff obtained a verdict and judgment for one thousand dollars. From the latter judgment this appeal is taken.

No question is made in the cause except those arising upon the refusal of the court to give certain instructions asked, and the sufficiency of the evidence to sustain the verdict.

We insert an abstract of the testimony of witnesses for the plaintiff, taken from the brief of counsel for the appellant, showing the main scope of the plaintiff's case as shown by his own witnesses:

"The plaintiff testified that, on the night in question, he went to the ticket office at Union Depot, and asked for two tickets 'to Columbus'— one for himself and one for Mr. Schloss—and was answered, 'we have no tickets for Columbus;' I think it was Mr. Miller of whom I asked tickets; am not certain; think it was one of the oldest men. He then, with his companions, Schloss and Schrible, got aboard of the train; and when about three miles out from Indianapolis, conductor called on him for his fare or ticket; witness offered him, and told him that he called for a ticket at the ticket office at Indianapolis, and could not get one; the conductor demanded two dollars and ten cents as the proper fare, and said he would have to put plaintiff off the train if he did not pay that sum, that such was the rule; witness said that if that was the rule, and he would enforce it, he (witness) would stand by his rule and pay only one dollar and ninety-five cents, and he offered it to him the second time; the conductor then went forward and returned with four or five or six men, and spoke to witness in a loud voice, took witness by the shoulder and told him to get off; he was put off; Schrible asked conductor if he was not going to take them to the next station; conductor said no, he was going to put them off right there; witness did not ask con-

ductor to put him off; witness and his companions were put off about three miles south of Indianapolis; it was a moonlight night; they walked three miles to Southport, the next station, and there failed to get lodging, and walked on to Greenwood, four miles further, where they got hotel accommodations, for which witness paid seventy-five cents; he arrived at Columbus next day, about half-past ten o'clock in the forenoon; the manner of the conductor was very insulting; he took me by the arm; he was angry; those that he called did not act roughly; one of them said I had better get off; witness refused to pay the additional fare, because he would not be imposed upon; he was a lawyer; his partner was absent from Columbus, and he had two cases to attend to the next day, before the county commissioners. The witness is silent as to whether his business was neglected or suffered on account of his absence.

"Cross examined. Asked for tickets to Columbus in ordinary tone, and he replied 'no tickets for Columbus;' there was a crowd at the window when I asked for the tickets; do not know that I said Columbus, Indiana; I suppose they sold tickets for Columbus, Ohio; I do not know who it was that came in with the conductor; I did not know one of them, but thought they were brakemen, as they seemed to have the peculiarities of brakemen; when we went out on the platform, the conductor stepped down on the ground and said for me to get off; I said they could push or pull me off; that I did not want to get off; and he said he would show me; but I got off without being pushed or pulled.

"Re-examined. There was no arrangement between witness, Schrible, and Schloss not to pay fare; but I stated to conductor that if put off I would sue the company; and after I was put off, Schrible said, 'now Rogers, if you do not prosecute the suit, you do not have the grit I thought you had.' Before I got on the cars that evening, I understood that the fare, when paid on the cars, was two dollars

The Jeffersonville Railroad Company *v.* Rogers.

and ten cents to Columbus, and I acted upon that understanding.

"Moses A. Schloss testified, in substance, as follows: I was with plaintiff about the 6th of March; was at ticket office, and plaintiff asked for two tickets for Columbus, and the agent said he had no tickets to Columbus; we went three or four miles, and the conductor came and asked plaintiff for his ticket; plaintiff offered him one dollar and ninety-five cents; conductor said the fare was two dollars and ten cents; plaintiff said he had tried to get a ticket, but could not; conductor said if he had got a ticket it would have cost one dollar and ninety-five cents, but on the cars the fare was two dollars and ten cents, and said if plaintiff did not pay he would put him off; the conductor then went through the car and collected fare and tickets from some others, and came back with some two or three with him and asked plaintiff if he was ready to pay him; plaintiff offered him the one dollar and ninety-five cents—that he would not pay any more, as he had tried to get a ticket; conductor rang the bell, and said plaintiff was not a gentleman; he took hold of plaintiff by the arm, outside the door; plaintiff said he could push him off; some one pushed plaintiff off; don't know who; Schrible offered him a two dollar bill; one or two were with him in the cars; some were outside, and some one pushed him (plaintiff) off; don't know whether conductor did go in advance of us; he put his arm around us and pushed or pulled us out; do not know who went out first; think plaintiff did; I got out on one side and Schrible on the other; when we got on cars, plaintiff said, 'Schrible, I could not get a ticket;' and Schrible said, 'the conductor will ask ten or fifteen cents more;' and plaintiff said that he would not pay it—that he would be put off the cars first, but he thought the conductor would not charge more; we did not think we would be put off, but I and Schrible said we would not leave him in the woods—that we would do whatever he would do; Schrible said it would cost more, just after we went into the cars, and about the time they started.

The Jeffersonville Railroad Company *v.* Rogers.

"Jacob M. Schrible—Did not apply for a ticket; conductor came in and asked plaintiff and witness for tickets; witness handed conductor two dollars and told him he wanted to get off at Lowell, and conductor asked him for ten cents more; witness said he was strapped; conductor returned the two dollars and said he would put us off; and witness said, 'go slow, wait till we get to a station;' and he said, 'yes, just here;' Rogers offered him one dollar and ninety-five cents and told him that he had applied for a ticket and could not get one; conductor took plaintiff by the arm, and witness said, 'you had better go slow;' we went out; conductor got off, and plaintiff said, 'you must take hold of my hand and help me off,' or something to that effect; thinks the conductor did not touch him after they got out of the car; some men came up to us with the conductor the last time he came to us; does not know that plaintiff said he wanted to stay on; some one was near and behind plaintiff, and, I thought, eased him down; they were put off three or four miles south of Indianapolis about midnight, and travelled to Greenwood before they could find a place to stay; it rained before they got to Greenwood; did not agree to be put off; offered two dollars; the conductor told us the fare to Columbus was two dollars and ten cents; I offered the two dollars to Lowell, and intended to go there, and not to Columbus; he said the train did not stop at Lowell; I said, 'if my friends get off, I will get off with them, but I would rather pay, and would go with them;' they just said they would come on to Columbus, but I did not intend to."

The court gave the following instructions to the jury:

"First.  The plaintiff in this action complains of the defendant, and alleges that the defendant, by her agents, wrongfully expelled the plaintiff from her train of cars *en route* from Indianapolis to Columbus, and thence to Jeffersonville, and claims damages for the wrongful act of her agents. The defendant answers, denying the allegations of the complaint.  The effect of this general denial is to require the

plaintiff to make proof of the material allegations of his complaint by a preponderance of testimony.

"Second. The defendant, at and prior to the time the act complained of was committed, had full power and lawful authority to fix and regulate her rate of fares from time to time, provided the fares so fixed were placed up at some conspicuous place or places on her road; and in fixing the rate of fares, she had a right to discriminate in favor of persons purchasing tickets before entering the cars. She, however, would be required to carry out this regulation in good faith; and before she could rightfully put in force this regulation in favor of those buying, and against those not buying, tickets, she would be required to be prepared to furnish persons about to take passage on her cars an opportunity to purchase tickets a reasonable time before the departure of the train; and if she fails to afford such reasonable opportunity to purchase tickets, she has no right to make such discrimination.

"Third. If you believe, from the evidence that the plaintiff applied at the ticket office of the defendant at Indianapolis, at a proper time, and to a proper person, and demanded a ticket and offered to pay for it, or even showed no unwillingness to do so, and a ticket was refused him without his fault, he had a right to take a seat in the cars and be transported to Columbus on the payment, when demanded, of the sum charged those who purchased tickets; and if the plaintiff, when called upon for his fare, offered to pay the usual rate of fare charged those purchasing tickets, and the conductor refused to accept it, but demanded a greater rate, and on the refusal of the plaintiff to pay the excess, the conductor ejected him from the train, the conductor was a wrong-doer, and the company is liable for the wrongful act and misconduct of its agent, and you must, if you find the facts so to be, find for the plaintiff.

"Fourth. If, however, you believe, from the evidence, that the plaintiff did not apply for, and was not refused, a ticket, as he has alleged in his complaint; and that he refused to pay

to the conductor of said train the regular and usual fare fixed by said company for passage paid upon the cars, then the conductor had a right to eject the plaintiff from said cars, using no more force than was necessary for that purpose; and he was under no obligation to wait until the train reached a station before he could lawfully eject him.   If you find the facts as stated above in this instruction, you must find for the defendant.

"Fifth.   If, from the preponderance of the testimony, you find that the plaintiff is entitled to recover from the defendant, it will be your duty to assess in his favor such an amount of damages as the testimony shows will compensate him for the injury which he sustained by the wrongful act of the defendant, and if you find from the testimony the wrongful act was done in the spirit of oppressive malice or wantonness, you may add to such compensatory damages such exemplary damages as, from all the circumstances, you may deem just."

The following are the charges asked by the defendant, and refused, in which error is claimed to have been committed:

"First.   If you believe that when plaintiff claims to have inquired at the ticket office at Indianapolis for a ticket or tickets for Columbus, Indiana, there were tickets at said office for sale to said Columbus, by way of said road, you must further find that he made inquiry at the usual place for sale and delivery of such ticket or tickets; and further, that some one in said office, in response to his inquiry for said ticket or tickets, said there were no tickets for Columbus.

"Second.   If you believe from the evidence, that the plaintiff applied for a ticket or tickets at said office and was not refused, you must find for the defendant; although you may believe from the evidence that he understood and believed that he was refused.

"Fourth.   If you find for the plaintiff, you will assess his damages at the actual amount sustained by him as shown by the evidence, unless you shall find from the evidence that there were no passenger tickets at said office at Indianapolis,

for said Columbus, by defendant's road, on the night in question; or that the agent or agents for the sale of tickets at said office purposely and wilfully refused to sell plaintiff a ticket or tickets for said point, when he inquired therefor; or that the agents of defendant used harsh and unnecessary means in ejecting plaintiff therefrom.

"Fifth. If the conductor of said train demanded of plaintiff an illegal and excessive rate of fare, the defendant could have paid the same under protest, and could have, in an action against the defendant, recovered from the defendant the amount so paid in excess of the proper amount."

The reasons for which a new trial was asked were, first, that the court erred in refusing to give instructions first, second, fourth, and fifth, as asked by the defendant; second, the verdict of the jury is contrary to law; third, the verdict of the jury is contrary to the evidence; fourth, the verdict of the jury gives the plaintiff excessive damages under the evidence.

The errors assigned simply cover the questions thus raised on the motion for a new trial.

We are of opinion that the first and second charges asked by the defendant were substantially and sufficiently embraced in those given by the court, and, therefore, that no error was committed in refusing them.

The fifth charge asked doubtless announces a correct legal proposition, viz.; that the plaintiff might have paid the excess demanded of him, under protest, and then sued the company and recovered it back. But he was not obliged to do so. On the contrary, if he had made the proper application for a ticket, and had been unable to procure one without any fault on his own part, he was entitled to be carried at the ticket rate; and being thus entitled to be carried, he had the choice of paying the excess demanded of him, or of insisting upon his right to be thus carried, and of holding the company responsible in damages for the refusal to thus carry him. The proposition announced in the charge in question, though probably correct in the abstract, can in no

manner affect the plaintiff's right to pursue the course taken by him, or his right to recover damages for the wrong done him by the company.    No error was committed in refusing this charge.

. We return to the fourth charge asked and refused.  We have seen that in the fifth charge given by the court, the jury had been instructed that if the wrongful act of the defendant was done in the spirit of oppressive malice or wantonness, they might assess exemplary damages.   This charge, thus given, was not objected to, nor could it be successfully, as will be shown by the authorities hereinafter cited.   Now, the fourth charge asked and refused assumes that unless the jury found that one of three things occurred, the plaintiff was not entitled to recover exemplary damages, viz.: first, that there were no passenger tickets for Columbus, by the defendant's road, at her office in Indianapolis, on the night in question; or, second, that the defendant's agents for the sale of tickets purposely and wilfully refused to sell the plaintiff a ticket for that point; or, third, that the defendant's agents used harsh and unnecessary means in ejecting the plaintiff from the car.

It is not difficult to conceive that the defendant might have had the required tickets at the Indianapolis office, and yet that her agents, through some mistake or inadvertence, supposed there were none, and, therefore, that there was no purposed and wilful refusal on their part to sell the plaintiff a ticket.   The plaintiff's right to be carried at the ticket rate of fare was precisely the same, whether the defendant's agents purposely and wilfully refused to sell him a ticket, or whether their failure to supply him with a ticket arose from any other cause without his fault.   If the plaintiff properly applied for a ticket and was unable, from any cause attributable to the company or her agents, to procure one, he had a right, whatever that cause might have been, to be carried at the ticket rates; and his expulsion from the car might entitle him to exemplary damages, though no "harsh and

The Jeffersonville Railroad Company *v.* Rogers.

unnecessary means" were resorted to in order to effect his ejection.

The charge assumes that the time, place, circumstances, and manner of the plaintiff's ejection from the car could not furnish a proper foundation for exemplary damages, unless harsh and unnecessary means were resorted to, though he was ejected wrongfully and in violation of his rights. The charge in question, we think, was correctly refused.

If the expulsion had been rightful in itself, it might, perhaps, have been legally effected at any time of day or night, and at any place, without reference to stations or the convenience and comfort of the party expelled. It seems to have been so held when the cause was in this court before; but see on this point the case of the *Illinois Central R. R. Co.* v. *Sutton*, 53 Ill. 397. But assuming that the plaintiff had become entitled to be carried at ticket rates, then his ejection from the car was wrongful and in violation of his legal rights; and, in our opinion, his expulsion in the night time, and at a distance from any station or convenient lodging-place, in short, his expulsion at the time and place, and in the manner indicated by the testimony above set out, without reference to any harsh and unnecessary means, authorized the jury to infer that it was done in the spirit of oppressive malice or wantonness, and to award exemplary damages if they saw proper to do so.

We think it is well settled that a corporation is liable for the wilful acts and torts of its agents committed within the general scope of their employment, as well as acts of negligence; and that the corporation is thus bound, although the particular acts were not previously authorized, nor subsequently ratified, by the corporation. Thus, in a late case, *Ramsden* v. *Boston & Albany R. R. Co.*, 104 Mass. 117, it is held that a railroad corporation is responsible for an assault and battery by the conductor of one of its trains upon a passenger in seizing or attempting to seize his property to enforce payment of fare. We quote the following passages from the opinion of the court in that case:

"A railroad corporation is liable, to the same extent as an individual would be, for an injury done by its servant in the course of his employment. *Moore* v. *Fitchburg Railroad Corporation*, 4 Gray, 465; *Hewett* v. *Swift*, 3 Allen, 420; *Holmes* v. *Wakefield*, 12 Allen, 580. If the act of the servant is within the general scope of his employment, the master is equally liable, whether the act is wilful or merely negligent; *Howe* v. *Newmarch*, 12 Allen, 49; or even if it is contrary to an express order of the master. *Philadelphia and Reading Railroad Company* v. *Derby*, 14 How. 468. The conductor of a railroad train, from the necessity of the case, represents the corporation in the control of the engine and cars, the regulation of the conduct of the passengers, as well as of the subordinate servants of the corporation, and the collection of fares. He may even eject a passenger for not paying fare. *O'Brien* v. *Boston and Worcester Railroad Company*, 15 Gray, 20. It has been adjudged by this court that if, in the exercise of his general discretionary authority, he wrongfully ejects a passenger who has in fact paid his fare, or uses excessive and unjustifiable force in ejecting a passenger who has not paid his fare, and injures him by a blow or kick, or by compelling him to jump off while the train is in motion; in either case, the corporation is liable."

We deem it unnecessary to cite further authorities upon this point. The principle lying at the foundation of the doctrine is as old as the common law, and is embodied in the maxim, *qui facit per alium, facit per se*, and is as applicable to corporations as to individuals. Doubtless, if a servant or agent commit a tort out of the scope of his agency or employment and not connected with it, the principal would not be liable therefor unless he previously authorized or subsequently ratified the act. Such, however, is not the case here.

It is also well established that vindictive or exemplary damages may be given against corporations for the tortious and wrongful acts of their agents. It was so held by this

The Jeffersonville Railroad Company *v.* Rogers.

court in this case when it was here before. 28 Ind. 1. The following cases may be cited also as in point. *The New Orleans, etc., Railroad Company* v. *Hurst,* 36 Miss. 660; *The Atlantic and Great Western Railway Company* v. *Dunn,* 19 Ohio St. 162; *Goddard* v. *Grand Trunk Railway,* 57 Maine, 202.

In the case cited from Mississippi, the plaintiff had taken passage on the defendant's cars at New Orleans, to be carried to Quin's Depot in the county of Pike, in the State of Mississippi. The train ran past the depot without stopping, and those having it in charge refused to return to the depot, and compelled the plaintiff to leave the train. For this he sued, and recovered a judgment of four thousand five hundred dollars, and the judgment was affirmed. The court say, amongst other things, "It is the peculiar province of a jury to assess damages, and when, as in actions sounding in damages merely, the law furnishes no legal rule of measurement, save their discretion, under the evidence before them, it is very rare indeed that a court will feel itself *justified in setting aside a verdict merely for excess.* It is not enough that, in the opinion of the court, the damages are too high. It may not rightfully substitute its own sense of what would be a reasonable compensation for the injury, for that of the jury. The jury are allowed, and indeed it is their duty, in all such cases, where the law provides no other penalty, to consider the interests of society, as well as justice to the plaintiff, and by their verdict, while they make just compensation for the private injury, also to inflict proper punishment for the disregard of public duty."

The case cited from Maine contains an exhaustive examination of the questions as to the liability of a corporation for the wilful torts of its agents, committed in the course of their employments, and the liability of the corporation to respond in exemplary damages. The questions are discussed on principle, and numerous authorities are collected. The case we regard as an instructive and valuable one.

Goddard was a passenger on one of defendant's trains of

cars. A brakeman on the train, who was temporarily acting as conductor, under the false claim that Goddard had not paid his fare, abused him, by words, in a most outrageous manner, applying to him coarse, profane, and insulting epithets, calling him a liar, and menacing and threatening him with great personal violence. For this Goddard sued and recovered a judgment of four thousand eight hundred and fifty dollars; and this judgment, after a very thorough consideration, was affirmed.

We have considered the case as made by the plaintiff's evidence. There was much evidence introduced by the defendant that tended to show a different state of facts. There was considerable apparent conflict in the evidence, but it was all for the consideration of the jury. We think the court committed no error in either giving or refusing charges; and while the damages assessed seem to be greater than we should expect to be found under the circumstances, we do not, under the well established practice of this court, feel authorized to disturb the verdict of the jury, either on the ground that it was not sustained by the evidence, or that the damages assessed were excessive.

The judgment below is affirmed, with costs.

*S. Stansifer, T. A. Hendricks, O. B. Hord*, and *A. W. Hendricks*, for appellant.

*R. Hill* and *G. W. Richardson*, for appellee.