JOHNSON v. THE C., R. I. & P. R. Co.

1. **New Trial:** POWER OF COURT TO GRANT. Courts ought to grant new trials, whenever their superior and more comprehensive judgment teaches them, that the verdict of the jury fails to administer substantial justice to the parties in the case.

2. **Railroads:** PERSONAL INJURIES: FORCE USED: INSTRUCTION. An instruction, as to the degree of force, which an employe of defendant might lawfully use in ejecting an obnoxious person from the station-house, considered and held unobjectionable.

3. ——: ——: TEST OF LIABILITY OF EMPLOYER. The true test by which to determine the liability of the employer or master, for the negligent or wrongful acts of the servant is, was the wrongful or negligent act done in the course and scope of the servant's employment? If it was, the employer is liable.

4. **Practice:** IMPEACHING TESTIMONY. The deposition of a witness may be read for the purpose of impeaching his testimony, where it is first shown to him, and he is afterwards examined upon that same subject-matter.

*Appeal from Wapello Circuit Court.*

MONDAY, APRIL 24.

ACTION for a personal injury which, it is alleged, the plaintiff received by being forcibly ejected from the station-house of the defendant at Eldon, by the agent in charge of the station. There was a trial by jury, which resulted in a verdict for the plaintiff for $4,000. Upon a motion for a new trial based upon several grounds the court required the plaintiff to remit $1,500 of the verdict, and thereupon overruled the motion. Defendant appeals.

*Stiles & Lathrop*, for appellant.

*W. H. C. Jacques* and *Wm. McNett*, for appellee.

ROTHROCK, J.—I. This is the second appeal in this case. There was a verdict for $2,000 at the first trial, which was re-

versed for errors in rulings of the court pertaining to the evidence, and for an erroneous instruction as to exemplary damages. See 51 Iowa, 25.

The plaintiff was removed from the waiting-room of the station by the agent of the defendant. That his shoulder was dislocated, either from a fall from the door, out of which the agent pushed him, or by a fall after he landed on the platform, is not disputed. It also appears, without any conflict or question, that the plaintiff was not in the waiting-room awaiting an out-going train upon which to take passage, or for any other purpose, for which a waiting-room at a station is kept open to the public. He was there for the purpose of waiting to take passage on a train on another railroad. The facts as to his right to remain in the waiting-room, are more fully set out in the opinion on the former appeal, which are in substance the same as are shown by this record. Without repeating the facts in detail, it is sufficient to say that there was no warrant from the evidence, conceding everything it tended to prove, which would justify any jury in finding that the plaintiff had any right to remain in the waiting-room, after being requested by the agent to leave it. That he was requested and refused before any violence was used towards him is not disputed. The only question then for the jury to determine, was, did the agent use more force than was reasonably necessary in removing the plaintiff from the room, and was he injured by reason of the excessive force. Upon this question we are asked to reverse the judgment, because the verdict finds no support in the evidence. In removing the plaintiff from the room no blows were struck by any one. The plaintiff resisted the force employed by the agent, and another employe of the defendant who assisted him in ejecting plaintiff, by holding to a seat, and by holding to a door case, as he was pushed out. There is a very decided preponderance of the evidence to the effect that the plaintiff and one Shinblom, who was his comrade on the occasion, were drunk and disorderly, and that they both

1. NEW TRIAL: power of court to grant.

deserved to be removed from the room for their conduct. And we also think that the great weight of the evidence is, that there was no excessive force used to effect the removal. But the plaintiff and Shinblom both testified that they were sober and well behaved, and that the agent used such force as to *throw* plaintiff out of the door. As Shinblom expresses it, " one of the men shoved Johnson to the door and took hold of him and threw him square out." Now we do not believe this testimony, simply because several witnesses testify in direct contradiction to it. But we cannot usurp the functions of the jury and the court below. Here are two concurring verdicts upon substantially the same facts, and two *nisi prius* judges have given their approval and indorsement of them by overruling motions for new trials grounded upon the insufficiency of the evidence. It appears to us this is a proper occasion to repeat what was said by this court more than ten years ago, that " Those courts ought to independently exercise their power to grant new trials, and, with entire freedom from the rule which controls appellate tribunals, they ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case." *Dewey v. C. & N. W. R. R. Co.*, 31 Iowa, 373. It is scarcely necessary to say that where there is a conflict in the evidence upon any fact this court must accept the finding of the jury as conclusive.

II. It appears that there are one or two steps down from the door of the waiting-room to the platform upon which the

2. RAILROADS: personal injuries: force used: instructions.
plaintiff fell or was thrown. The defendant complains that the court did not instruct the jury that if the falling of the plaintiff was attributable, wholly or in part, to the steps at the door, or was caused in part by his intoxication, and not by the unreasonable and unnecessary force on the part of the agent, that there could be no recovery. The instructions given by the court are as full and explicit as can be expected under our system of

practice, which requires all instructions to be in writing. They distinctly informed the jury that to find for the plaintiff it must appear from the evidence that the *agent used more force than was reasonably necessary, and that by reason of the excessive force the plaintiff was injured. They were advised that it was their duty to consider the resistance made by plaintiff and the force used, and all the circumstances, and conduct of the parties. This, we think, was sufficiently explicit. Indeed, the instructions appear to us to be unobjectionable.

III. The defendant requested the court to instruct the jury as follows:

"3. If the plaintiff, when injured, was not a passenger on defendant's road, and was not waiting or expecting to take a train thereon, but on the contrary was intending to go out on the Keokuk & Des Moines Railroad, then, as respects defendant and its road, he stood in the light of a stranger, or as one having no business with the road, and if under the circumstances the local agent, Stone, wrongfully assaulted plaintiff and ejected him from the depot, whereby plaintiff was injured, the defendant would not be liable therefor, and Stone would alone be liable for his wrongful acts."

*3. ——: ——: test of liability of employer.*

This and another instruction to the same effect were refused by the court.

The counsel for defendant, in their argument, claim that these instructions should have been given. They, however, cite us to no authority in support of the claim. The rule that carriers of passengers are liable for the negligent or wrongful acts of their servants or employes does not always depend upon the fact that the carrier owes a duty, or is under some obligation, to the party injured. Where a person is found upon a train who refuses to pay his fare the company owes him no duty, and he may be removed; but if in removing him he is wrongfully injured by personal violence, or by being thrown from the train when in motion, or the

like, he may recover from the company for his injuries. This is no more than the application of the ancient rule, that if one person come into the dwelling-house of another without right, after requesting him to depart and his refusal to comply with the request, he may be removed by gently laying hands upon him and using such force as is reasonably necessary to effect the object. But if excessive force be used the action is a wrongful assault for which a recovery may be had. The true test by which to determine the liability of the master or employer, for the negligent and wrongful act of the servant or employe, in this class of cases, is, was the wrongful or negligent act done in the course and scope of the employment of the servant or agent? · If it was, the employer is liable. But if the employe does any act aside from his employment, such as committing an assault with his own hands upon a stranger, and independent of his employment, the employer is not liable. For example: if an agent, conductor, or other employe, should assault a loafer in a waiting-room in a personal quarrel having no relation to his employment, the company would not be liable in damages. But that is not this case. The station agent was acting in the line and scope of his employment when he ejected the plaintiff from the waiting-room. For a full discussion of the question of the liability of master for the wrongful acts of agents and servants, see Redfield on Railways Vol. 1, p. 532 to 543, and notes. See, also, *Mc-Kinley v. C. & N. W. R. R.*, 44 Iowa, 314.

IV. One Beck was a witness in behalf of the defendant. His deposition had been taken by the plaintiff 4. PRACTICE: impeaching testimony. and was on file and present when he was examined as a witness. Part of the deposition was read to the jury by the plaintiff, for the purpose of impeaching his testimony given upon the trial. It is claimed that the permission given by the court to read the deposition was erroneous, because the deposition was not first shown to the witness and an opportunity given him to explain. It appears, however, from the abstract of appellee that the deposition was shown

to the witness. Whether or not he had an opportunity to read it before parts of it were read to the jury, we do not think material, because it appears by the abstract that the deposition was read while Beck was on the stand as a witness, and as soon as read he was further examined, and the defendant re-examined him, and also read to the jury other parts of the deposition.

Under these circumstances it is apparent that no advantage was taken of the witness that could in the least have prejudiced the defendant.

AFFIRMED.