Carter v. The Louisville, New Albany and Chicago Railway Company.

No. 8876.

## CARTER v. THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY.

RAILROADS.—*Liability for Servants' Acts.—Trespasser.—Negligence.*—The servants of a railway company, put in charge of a switching engine used to place cars, have implied authority from the company to remove trespassers from the engine, and if in doing so the trespasser be injured, not in consequence of negligence merely, but because of the reckless manner of doing it, evincing an indifference to consequences, the company is liable.

From the Tippecanoe Circuit Court.

*B. F. Love, H. C. Morrison, T. B. Adams, L. T. Michener, G. S. Orth* and *J. Park,* for appellant.

*J. R. Coffroth, T. A. Stuart, S. P. Baird* and *W. F. Stillwell,* for appellee.

MORRIS, C.—This is a suit for damages commenced by the appellant against the appellee for a personal injury, alleged to have been caused by the wrong of the appellee. The complaint contains four paragraphs.

It is stated in the first paragraph of the complaint that on the 24th day of July, 1877, the appellee was running and operating a railroad located in Tippecanoe county; that it was running engines and cars on its said road, and that it was, at the same time, using and running an engine on a side-track of said road, in and near the city of Lafayette, in said county, in and about the transaction of its business; that while engaged in running and operating said engine on said side-track in and about its said business, and when said engine was not in motion, the appellant and others, with the knowledge of, and without objection from, the servants of the appellee having charge of said engine, got on to the same; that while the appellant was so on said engine, and seated in the front part of the same, under the head-light thereof, said servants of the appellee, having charge of said engine, put the same in motion on said side-track, and while said engine was running at a rate of speed that made it unsafe for the appellant to get

off of the same, *one of said servants* ordered him off, to which he replied that he would get off if they would stop the engine so that he could safely do so; that thereupon, without checking the speed of the engine, the said servant shoved him off of said engine on to said side-track and in front of the engine, in such position that his left leg came in contact with the rail of said track; that the wheels of said engine passed over the appellant's left leg, crushing the bones thereof so that it became and was necessary to amputate his said leg some four inches below the knee; that he suffered great pain, and was put to great expense, etc.     —

The second paragraph of the complaint is like the first, except that the statement, that the appellant got upon the engine with the knowledge and without objection from the appellee's servants having charge of said engine, is omitted. It states that one of the appellee's servants, having charge of said engine, seized the appellant and negligently threw him from said engine. In other respects they are the same.

The third paragraph is, in substance, the same as the first; it states that the appellant got on the engine with the knowledge and notice of the appellee; that the appellee, through its servants, and while the engine was in motion, shoved the appellant off, etc.

The fourth paragraph is the same as the third, except that it states that the appellee negligently and carelessly pushed the appellant from the engine.

The appellee demurred separately to each paragraph of the complaint, on the ground that neither states facts sufficient to constitute a cause of action. The court sustained the several demurrers, and the appellant, electing to stand by his complaint, final judgment was rendered for the appellee.

The errors assigned bring in question the rulings of the court upon the demurrers to the complaint.

The appellee contends that each paragraph of the complaint is fatally defective, because neither shows it to have been in fault; that, upon the facts stated, it is not responsible for the

acts of those who threw the appellant from the engine; that those who threw or pushed the appellant off the engine are not alleged or shown to have been acting within the scope of their employment.

It may be safely assumed, we think, that the appellee was, upon the facts stated in each paragraph of the complaint, wrongfully upon the appellee's engine. He must have known that the position which he had voluntarily taken and occupied upon the engine—in the front portion of it under the head-light—was a dangerous and improper one. He is not alleged to have been invited by the appellee or its servants to occupy this position of danger. The use of the engine, its construction and obvious design, unmistakably notified the appellant that it was not intended for the purpose for which he was improperly using it. He was voluntarily and wrongfully upon the engine, and therefore took upon himself whatever risks and perils, not occasioned by the wrongful acts of those in charge of the engine, might attend the position which he had assumed. Nor does the fact that the appellant was thus upon the engine, with the knowledge of and without objection from those in charge of it, excuse, much less justify, his conduct. The knowledge of the appellee's servants and their failure to object will, under the circumstances stated in the complaint, hardly warrant the inference that the appellee had authorized such servants to assent to, and approve for it, the conduct of the appellant. The engine itself, its uses and obvious design, were a warning and protest against the conduct of the appellant which he was not at liberty to ignore or disregard. He could not, without negligence, assume the position which he avers he did, so obviously dangerous, even with the permission of those in charge of the engine. *Robertson* v. *New York, etc., R. R. Co.*, 22 Barb. 91.

Though wrongfully upon the appellee's engine, the appellant did not thereby assume the risks to his person that might be caused by the wrongful acts of the appellee's servants, and

if such acts were expressly or constructively authorized by the appellee, it must be held to be liable for their consequences. It is averred in each paragraph of the complaint, that one of the appellee's servants pushed the appellant from the engine while it was moving at a rate of speed which rendered it dangerous for him to get off of it; that he fell in front of it and on the rail of the track, and was injured by the wheels of the engine passing over his leg. Though wrongfully upon the engine, the appellant was not an outlaw, nor did he thereby assume the risks to his person caused by the alleged conduct of the servants of the appellee. He assumed the risks incident to his own wrong, but not those incident to or directly resulting from the wrongful act of the servant. To push or throw the appellant from his position on the engine, while it was running at a speed that made it dangerous for him to get off, was an act, not of omission, of mere negligence, in the sense in which the word is used in the case of *Pennsylvania Co.* v. *Sinclair*, 62 Ind. 301, and other cases referred to by the appellee, but of reckless aggression, evincing a wanton indifference to consequences and willingness to inflict injury.

The appellee contends that unless it is alleged or shown that the acts of its employees were wilful or purposed, the complaint is bad, because there was negligence on the part of the appellant. Grant this, though we do not decide it, yet the complaint shows that those in charge of the engine were guilty of something more than mere negligence, as that word is used in the case of *Pennsylvania Co.* v. *Sinclair, supra,* relied upon by the appellee. There was, according to the averments, that " something more than mere negligence," which evinces wilfulness, a purpose to injure. Here the injury was the direct result of the aggressive act of the appellee's servant. The act of pushing the appellant off the engine was the proximate cause of the injury. The wrong of the appellant was not proximate to the injury so as to preclude his right to recover. True, if he had not been upon the engine, he would not have

been thrown from it; but, though wrongfully upon the engine, had he been let alone, or properly removed from it, he might not have been hurt. The party who enters a street-car, without intending to pay his fare, is there wrongfully, and may be removed. But if negligently thrown from the car by the owner and injured, no one would doubt the latter's liability. See Whart. Neg., section 345, *et seq.*, and notes; Shear. & Redf. Neg., section 264; *Lawrenceburgh, etc., R. R. Co.* v. *Montgomery*, 7 Ind. 474; *Howe* v. *Newmarch*, 12 Allen, 49; *Philadelphia, etc., R. R. Co.* v. *Derby*, 14 How. 468; *Jeffersonville R. R. Co.* v. *Rogers*, 38 Ind. 116 (10 Am. R. 103).

Assuming, as we have, that the person who threw the appellant from the engine was the servant of the appellee, and acting within the scope of his employment, we think the complaint is clearly good.

We think it too clear to be seriously questioned that those in charge of and operating the engine of the appellee, in transacting its business, had not only the right to remove from it any person wrongfully upon it, but authority to do so from the appellee. Authority to take charge of and operate the engine would include authority to remove from it any thing or person whose presence upon it might in any way interfere with its use. Such authority is indispensably necessary to enable the servant to transact the business of the master. The question is not as to the manner of the removal, but whether those in charge of an engine may, by authority of the master, because they have control of it, remove from it persons who have wrongfully gotten upon it. Had those in charge of the engine stopped it, and, without unnecessary force or violence, removed the appellant from it, no one would doubt that they could justify the act as the servants of the appellee. *Indianapolis, etc., R. R. Co.* v. *McClaren*, 62 Ind. 566; *Jeffersonville R. R. Co.* v. *Rogers, supra.* In the latter case it is said: "If the act of the servant is within the general scope of his employment, the master is equally liable, whether the act is wilful or merely negligent; * * or even if it is contrary to an ex-

Carter *v.* The Louisville, New Albany and Chicago Railway Company.

press order of the master." It can hardly be questioned, we think, that the removal of a person wrongfully upon an engine is within the scope of the employment of those to whom its care, management and control have been entrusted. Wood Master and Servant, pp. 587, 655, 656; *Evansville, etc., R. R. Co.* v. *Baum,* 26 Ind. 70; *Noblesville, etc., G. R. Co.* v. *Gause,* 76 Ind. 142 (40 Am. R. 224).

In the case of *Rounds* v. *Delaware, etc., R. R. Co.,* 64 N. Y. 129 (21 Am. R. 597), the facts were substantially as follows: The plaintiff jumped upon the platform of a baggage car on the defendant's road to ride to a place where the cars were being backed to make up a train. The defendant's rules forbade all persons, except certain employees, riding on baggage cars, and directed baggagemen to rigidly enforce the rule. The plaintiff's evidence tended to show that the baggageman ordered the plaintiff off while the car was in motion. A pile of wood was near the track. The plaintiff replied that he could not get off because of the wood, whereupon the baggageman kicked him off; he fell against the wood and under the cars and was injured. The court held that the baggageman was, while kicking the plaintiff off the platform, acting within the scope of his employment, and that the fact that the plaintiff was a trespasser was no defence. *Hewett* v. *Swift,* 3 Allen, 420; *Pittsburg, etc., R. W. Co.* v. *Caldwell,* 74 Pa. St. 421; Cooley Torts, p. 120; *Shea* v. *Sixth Ave. R. R. Co.,* 62 N. Y. 180 (20 Am. R. 480); *Lovett* v. *Salem, etc., R. R. Co.,* 9 Allen, 557.

It is insisted that the several paragraphs of the complaint are bad, because it is only averred that one of several employees of the appellee, having charge of the engine, pushed the appellant from it, without specifying the duties and employment of this particular one of said employees. After stating the manner in which the appellant got upon the engine, it is averred, in the first paragraph, that the employees of the appellee having charge of the engine put it in motion, that one of said employees ordered the appellant off, etc.;

"that *said* employee shoved him off," etc. If, as thus averred, one of several employees of the appellee, having charge of the engine, put him off of it in the manner stated, the appellee is responsible for his act.   In this respect the other paragraphs are like the first, some of them more certain, indeed, and the fourth alleges that the appellee threw the appellant from the engine.   The complaint, and each paragraph of it, is as certain and specific in this respect as were the complaints in the cases of *Evansville, etc., R. R. Co.* v. *Baum, supra,* and *Pittsburgh, etc., R. R. Co.* v. *Theobald,* 51 Ind. 246.   If the complaint was not sufficiently specific, a motion to make it more specific would have been proper.

We conclude that the several paragraphs of the complaint are good, and that the demurrer to them should have been overruled.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the cost of the appellee, with instructions to overrule the demurrer to each paragraph of the complaint.

Filed Oct. 5, 1882.

## ON PETITION FOR A REHEARING.

PER CURIAM.—While a member of the Supreme Court Commission, Mr. Commissioner MORRIS wrote an opinion overruling the petition for a rehearing.   That opinion has been held under advisement by the court.   The petition for a rehearing is now overruled, and the opinion written by the commissioner is adopted as the opinion of the court.   It is as follows:

A petition for a rehearing, accompanied by an earnest and able argument, has been filed in this case.   The appellee complains that in the opinion, no notice is taken of the fact that, in several of the paragraphs of the complaint, the engine which is alleged to have run upon and injured the appellant is described as a "switching engine."   This is true, but as the engine is not described in any of the paragraphs as hav-

ing been used in connection with a passenger train, it was thought unnecessary to notice such fact.

It is held in the main opinion, that the servants of a railroad company, to whom the management and control of an engine has been entrusted, whether used for switching or other purposes, have, while using and controlling it, implied authority to remove from it any trespasser who may get upon it or attempt to occupy and control it. · In thus holding, the appellee insists that the court erred. The appellee admits, as we understand its counsel, that those in charge of its passenger engines and trains have implied authority, as its servants, to remove and put off persons wrongfully upon such engines and trains; but it denies that its servants, to whom it has given the management and control of a " switching engine," have implied authority to remove from it persons wrongfully upon it while so being used by its servants in the transaction of its business. If such servants have no such implied authority, a rehearing should be granted; if they have such authority, the petition should be overruled.

It is said by the appellee, that switching engines are used for local purposes—to place and replace cars, etc.—and not for the purpose of receiving and discharging passengers; that, therefore, its employees have no implied authority to remove from an engine committed to their care for such purposes, persons wrongfully upon it, whether their presence may or may not interfere with the use of the engine and the business to be transacted. Several cases are cited in support of this view. The first case to which the appellee calls our attention is that of *Towanda Coal Co.* v. *Heeman*, 86 Pa. St. 418. In this case a minor had climbed upon one of the defendant's coal cars when in motion. A brakeman drove him off by throwing coal at him. He was hit in the face by a piece of coal which caused him to fall, whereby he was injured. It was held that the defendant was not liable. The proof showed clearly that the brakeman was not in charge of the coal train; that, though a coal train (the appearance

of which showed that it was not used for transporting passengers), its conductor, as its general manager, had authority to remove trespassers from it. This was conceded by the defendant's counsel, and the reasoning and whole drift of the case show, that had the conductor violently removed the boy, a different result would have been reached.

The next case cited by the appellee is that of *Marion* v. *Chicago, etc., R. R. Co.*, 59 Iowa, 428 (44 Am. R. 687), in which it was held that the defendant was not liable for the act of a brakeman in putting a trespasser off a freight train in motion, without direction from the conductor, who alone was authorized by the defendant to order such ejection. The court held the defendant not liable, because the brakeman had no authority, express or implied, to remove trespassers from the train. But it further held that the conductor, by his general employment as the manager of the train, had such authority, and that, had he ejected, as did the brakeman, the plaintiff from the train, the defendant would have been liable. And we think it equally clear that, had a tramp got upon the engine, not as a passenger or for the purpose of stealing a ride, but from mere idle curiosity, the conductor or engineer would have had authority to remove him, not because he had charge of passengers, but because he had the general control of the engine and train. The removal of such a trespasser would have about the same relation to the business of transporting passengers that the removal had, in the case before us, to the business of changing the position of cars. If the servant in charge of the freight train would be acting within the scope of his authority in removing from his engine such a trespasser, would not the servant, in charge of a switching engine, also have the implied authority to remove such a trespasser from the engine in his charge? The relation of the servant and the trespasser to the business of the employer would be the same in both cases. The trespasser upon the engine would interfere no

more with the transportation of freight or even passengers, than he would with the changing of cars.

The next case relied upon by the appellee, which we notice, is that of *Wright* v. *Wilcox*, 19 Wend. 343. The defendant's servant was driving a wagon. A boy asked permission to ride. The servant said he might when he got to the top of a hill which he was then ascending. The boy got hold of the side of the wagon between the front and hind wheels. The servant cracked his whip and the horses started into a trot, whereby the boy was thrown under the wheels and injured. The master and servant were sued jointly. It was held by the court that they were not jointly liable. It was also held that the act of the servant was clearly wilful, and that, therefore, the master was not liable. The court, following the rule stated in *McManus* v. *Crickett*, 1 East, 106, says:

" If Stephen," the servant, " in whipping the horses, acted with the wilful intention to throw the plaintiff's boy off, it was a plain trespass, and nothing but a trespass, for which the master of Stephen is no more liable than if his servant had committed any other assault and battery. All the cases agree that a master is not liable for the wilful mischief of his servant, though he be at the time, in other respects, engaged in the service of the former." Again, the court says: " The law holds such wilful act *a departure from the master's business.*" This statement of the law is not correct. If the act of the servant is within the scope of his employment, the master is liable, however wilful the act on the part of the servant may have been. In speaking of this and the class of cases to which it belongs, Thompson in his work on Negligence, pp. 886–7, says: " If he," the servant, " makes use of his master's property in committing this wrong, he will be deemed, according to the fantastic reasoning of Lord Kenyon" in *McManus* v. *Crickett, supra,* " to have acquired, for the time being, a special property therein. The fallacy of this reasoning was, that it made a certain mental condition of the ser-

vant the test by which to determine whether he was acting about his master's business or not.   Moreover, with respect of all intentional acts done by a servant in the supposed furtherance of his master's business, it clothed the master with immunity if the act was right, because it was right; and if it was wrong, it clothed him with a like immunity because it was wrong."   He further says: "A doctrine so fruitful of mischief could not long stand unshaken in an enlightened system of jurisprudence."   See the cases cited on p. 887, repudiating the doctrine, which the author says is not the law.

The case of *Isaacs* v. *Third Avenue R. R. Co.*, 47 N. Y. 122 (7 Am. R. 418), relied upon by the appellee, has been substantially overruled.   Wood disapproves the case in his work on Master and Servant.

The case of *Shea* v. *Sixth Avenue R. R. Co.*, 62 N. Y. 180, is, in its reasoning, opposed to it.   In *Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543, Judge ALLEN, who prepared the opinion in the case, admitted that it had been questioned, that it was a " border case," and that it " may seem to infringe upon some of the other reported cases."

Other cases are referred to by the appellee.   We have examined them, and think they are not in conflict with the main opinion in this case.

In the case of *Hoffman* v. *New York Cent., etc., R. R. Co.*, 87 N. Y. 25 (41 Am. R. 337), it was held that a brakeman on a passenger train, as well as the conductor, had implied authority to remove from the train a boy who had jumped on the platform of one of the cars for the purpose of stealing a ride, and that the employer would be liable if he improperly removed the boy while the train was in motion.   The court says: " Suppose a train was standing still, and a trespasser was put off by force by a brakeman, using no unnecessary violence, would it not be a good defence to an action against him for the assault, that he was a brakeman, and did the act complained of in that capacity, although without express authority?   The implied authority in such a case, is an inference from the nature of the

business, and its actual daily exercise, according to common observation and experience." Equally may the authority of those in charge of a switching engine to remove trespassers from it be inferred from the nature of the business and its actual daily exercise, according to common observation. And so, too, might one, in charge of such an engine, if sued for assault for removing a trespasser from it, answer that he was in charge of it as the servant of the company. The court, in support of its decision, refers to *Rounds* v. *Delaware, etc., R. R. Co.*, 64 N. Y. 129.

In the case of *Benton* v. *Chicago, etc., R. R. Co.*, 55 Iowa, 496, a boy had entered an empty freight car to steal a ride. He was discovered by the conductor and roughly ordered out. The train was in motion. The only way of escape was through a window, and the boy, in attempting to crawl out, lost his hold and fell upon the track, and was run over and killed. It was held, upon proof of these facts, that the case should go to the jury. No doubt was expressed as to the authority of the conductor properly to remove the boy. The train was not a passenger train, but a freight train. Presumably, it was to be used simply for the transportation of freight. The conductor's authority to remove trespassers from such a train can be inferred or implied only from the fact that he has control of the train, and from the nature of the business and the means employed in its transaction. The exercise of such power is necessary alike for the protection and security of the employer and the public.

In the case of *Evans* v. *Davidson*, 53 Md. 245 (36 Am. R. 400), a general farm servant, in the absence of his master, undertook, with other servants, to drive a cow of the plaintiff out of his master's cornfield into which she had broken, and, in doing so, struck the cow with a stone and killed her in the field. The master was held liable.

In the case of *Cauley* v. *Pittsburgh, etc., R. W. Co.*, 98 Pa. St. 498 (4 Am. & Eng. R. R. Cases 533), a boy got upon a sand car standing upon a switch. The car was moved a few yards,

and while in motion the conductor ordered him off. In obeying the order the boy was injured. Upon the trial the boy offered to prove the above facts. The court ruled the offered evidence out, on the ground that the facts did not tend to prove negligence on the part of the defendant's servants. PAXSON, J., says: ."All the conductor did was to order the plaintiff off the car. This was his duty to do. The boys were trespassers, and their removal from the cars was not in itself a cause of complaint. Was there anything in the manner of their removal which would render the defendant company liable in damages? The plaintiff was not thrown off. He was not touched by the conductor or any railroad employee. * * * Before the company can be held liable it must appear that the injury to the plaintiff was the natural and probable result of the conductor's order."

The court held that the offered evidence did not tend to prove this, and that, therefore, there was no error in its exclusion. But the court also held that it was the duty of the conductor having control of the sand car to remove the trespassing boys from it. The conductor's authority was not inferred from the fact that it was his duty to receive and discharge passengers on and from the sand car, for its form and construction, as well as its use, was notice to him and all others, that it was not intended and could not, any more than a switching engine, properly be used for any such purpose. It was his duty to remove trespassers from the sand car, because its management and control had been entrusted to him, and because such a use of the sand car by trespassers would be incompatible with the use which the conductor was, by his employment, required to make of it in the transaction of his employer's business. The court assumed that, had the conductor improperly removed the plaintiff from the sand car, the defendant would have been liable. This case is, we think, directly in point. Had the appellant wrongfully intruded himself into and occupied the engineer's cab, to the exclusion of the latter, could not those in charge of the engine

have removed him, using no unnecessary force. Would not the possession and control of the engine, and their duty to use it in placing and replacing cars, have clothed them by implication with authority to remove such a trespasser? Would it not, as in the case just cited, have been their duty to do so? If the position of the appellee is the law, those in charge of the engine would have no power to remove the trespasser, because the engine was not to be used in hauling passengers, instead of placing and replacing cars.

As against those to whom the possession of the engine had been given for a special purpose, and the exclusive possession and control of which were essential to accomplish that purpose, the trespasser must be regarded as the rightful occupant of the engine, though his possession, by preventing the use of it in placing and replacing cars, might ruinously delay the transportation of freight, endanger the safety of property and passengers, and expose the employer to incalculable losses. We think the appellee, by placing its servants in possession of a switching engine for the purpose of placing and replacing cars upon its track at Lafayette, impliedly gave them authority not only to retain the exclusive possession of the engine while so engaged, but to remove from it all trespassers and wrong-doers.

In the case of *Johnson* v. *Chicago, etc., R. R. Co.*, 58 Iowa, 348, it was held that those in charge of the appellant's station-house had implied authority to remove from the waiting room a person who was not there for the purpose of taking passage on the appellant's road, and that, if unnecessary force and violence were used in his removal, the appellant would be liable. It was, says the court, nothing more than the application of the ancient rule, that if one person came into the dwelling-house of another without right, after requesting him to depart, and his refusal to comply, he may be removed by gently laying hands upon him and using such force as is reasonably necessary to effect the object. Because the employer might, if present, remove from its engine a trespasser,

or from its station-house an intruder, so may the servant to whom the possession, care and use of the station-house or switching engine have been intrusted, remove from the one or the other trespassers and wrong-doers. It is the right of possession in the master, and the duty of the servant to whom the property has been intrusted, to keep and maintain that possession for the master, which give the latter the right to remove trespassers. See also the case of *Nashville, etc., R. R. Co.* v. *Erwin,* 3 Am. & Eng. R. R. Cases 465.

Filed Feb. 11, 1885.