## HANCOCK v. LAKE ERIE AND WESTERN RAILROAD COMPANY ET AL.

[No. 2,420.   Filed October 4, 1898.]

RAILROADS.—*Injury at Crossing.*—*Negligence.*—A person approaching a railroad crossing must exercise care in proportion to the danger to be avoided, and if he is injured he must show affirmatively that his own negligence did not contribute to the injury. *p. 13.*

SAME.—*Crossing.*—*Obstruction of View of Track.*—The fact that the railroad track is partially obstructed from view imposes upon one about to cross the same the duty of increased care in the use of the sense of hearing.   *pp. 13, 14.*

*Special Verdict.*—*Finding of Ultimate Facts.*—*Negligence.*—*Railroads.*—Where upon the facts found in an action for damages for injuries sustained at a railroad crossing two or more inferences may be drawn therefrom as to the exercise of care on the part of plaintiff, the finding by the jury of the ultimate fact of ordinary care is proper; but where the jury find the facts, informing the court what was done and what was not done by the injured party, and the court can, as a matter of law, adjudge that the injured party was or was not guilty of contributory negligence, the finding of such ultimate fact must give way to the findings of specific facts. *pp. 14, 15.*

RAILROADS.—*Negligence.*—*Injury at Crossing.*—In an action for damages on account of injuries sustained at a railroad crossing, the fact that the flagman was not at his usual place at such crossing when plaintiff approached would not relieve plaintiff of negligence in approaching such crossing without due care, where it was shown that she could have seen the flagman waving his flag if she had looked attentively.   *pp. 16, 17.*

SAME.—*Wilful Injury.*—*Complaint.*—A complaint against a railroad company for a wilful injury at a railroad crossing, which charges that a number of acts leading up to the injury were done wilfully, is not sufficient, where it is not alleged that defendant wilfully injured plaintiff.   *pp. 17-20.*

From the Howard Circuit Court.   *Affirmed.*

*Fippen & Purvis* and *Moon & Wolf,* for appellant.

*Bell & Purdum* and *John L. Rupe,* for appellees.

ROBINSON, J.—Appellant brought this action against appellee and the Pittsburgh, Cincinnati, Chi-

cago & St. Louis Railroad Company, which latter road was at the time using the track of the former, to recover damages for injuries alleged to have been received at a highway crossing.  A special verdict was returned, upon which judgment was rendered in appellee's favor, and this action of the court is the only question presented by the assignment of errors.  It is conceded by counsel for appellee that the verdict shows negligence on the part of the company.  From the special verdict it appears that, about 1 o'clock in the afternoon of August 10, 1893, a clear day, appellant, with her sister, mother, and ten-year-old daughter, all in a one-seated top buggy drawn by a gentle horse, approached a street crossing in Tipton, Indiana, where Jefferson street crosses appellee's tracks.  Two of the ladies occupied the buggy seat, and the daughter sat on the lap of one, and appellant on the lap of the other.  As seated, appellant's head came near the top of the buggy.  In going from Deal street to the crossing, about 600 feet, the horse was checked from a trot to a walk, about half a square from the crossing, and from that point was driven to the crossing in a trot. When she checked the horse into a walk she listened for a train, but heard none, and from that point on she looked continuously toward the crossing for trains and the flagman, and listened continuously for trains, and saw and heard neither, nor any warning of danger, until near the track, and when she first saw the train it was so near the horse as to make it impossible to prevent his scaring.  Appellant was going west and the train south.  There were obstructions on the north side of the street from where appellant entered on the same, so that the track north of the street or a train approaching thereon from the north could not be seen by a person at any point on said street east of a few feet from the railroad track.  There were four

tracks at the crossing,—the main track, and two switches east and one west. A box freight car stood on the east side-track, thirty feet north of the north line of the street, which further obstructed appellant's view. Appellant was well acquainted with all the surroundings of the crossing, which was a dangerous one, and at which a flagman was constantly needed. The noise of the horse and buggy on the brick paved street, and a mill in operation in the immediate vicinity interfered with appellant's ability to hear the train, and the buildings and other obstructions on the north side of the street obstructed the sound of the approaching train. Appellant's senses of sight and hearing were unimpaired. Appellant and those with her, as they approached the crossing, were laughing and talking among themselves. The train, as it approached the crossing, was making a loud noise, which was heard by persons as far east as Deal street, and by a number of persons both east and west of the crossing. The engine bell was ringing, and the pop-valve of the engine released, causing a loud noise. If appellant had stopped and listened attentively, she could have heard the train approaching the crossing before she came within 100 feet of the crossing, and if she had stopped and listened attentively she could have heard the train approaching in time to have stopped within a safe distance of the track. The flagman kept at the crossing had a little house on the south side of the street, and immediately west of the track, in which he usually stayed if no train was approaching, and if a train was approaching it was his custom to come out and signal persons approaching, and the proper and usual place for signaling was near the flagman's house. At said time he was on the south side of the street about fifty feet west from the track, and his attention was called to appellant when

she was about 150 to 200 feet from the crossing, and he then waved his flag, and when appellant was about fifty feet away he gave a second warning with his flag. Appellant failed to see the warnings, because the flagman was not at his usual place. Immediately after the second warning the flagman started toward the crossing, and cried out to appellant to stop, but she did not see or hear him or the train until she was in immediate proximity to the crossing, and upon the right of way, and after she saw the train she could not have prevented the horse from becoming frightened and turning around and overturning the buggy. Appellant, from the time she came onto Jefferson street from Deal street, could have seen the flagman on the street with his flag, and within view of appellant, until she came to the crossing. If she had looked attentively, she could have seen the flagman waving his flag to give warning before she came within 100 feet of the crossing.

It is the law in this State that a person approaching a railroad crossing, known by him to be dangerous, must exercise care in proportion to the danger to be avoided; that he must use his senses, must listen for signals or the noise of approaching trains, must observe signs put up as warnings, and look for trains where there is a view of the track; that if he is injured at a crossing the fault is *prima facie* his own, and he must show affirmatively that his own negligence did not contribute to the injury; that in approaching the crossing he must assume that there is danger and act with ordinary care and prudence on that assumption. See *Chicago, etc., R. Co.* v. *Hedges*, 118 Ind. 5; *Ohio, etc., R. Co.* v. *Hill*, 117 Ind. 56; *Louisville, etc., R. Co.* v. *Stommel*, 126 Ind. 35; *Smith* v. *Wabash R. Co.*, 141 Ind. 92; *Cincinnati, etc., R. Co.* v. *Duncan*, 143 Ind. 524; *Pennsylvania Co.* v. *Myers*, 136 Ind. 242.

It appears that there were obstructions which shut out almost all sight in the direction from which the train was approaching. That fact imposed the duty of increased care in the use of the sense of hearing, and to that end appellant, in approaching the crossing, should have stopped and attentively listened. *Cincinnati, etc., R. Co.* v. *Duncan, supra.* And the jury find in their verdict that, if appellant had stopped and listened attentively, she could have heard the train approaching the crossing before she came within 100 feet of the crossing. Appellant knew that a flagman was kept at the crossing, and she was acquainted with his usual mode of attending the crossing. It is true the jury find that she failed to see the flagman when he gave the warnings because he was not at the usual and proper place for him to be. But it appears that the flagman was near, and the jury find that appellant, from the time she came onto Jefferson street at Deal street, about 600 feet from the crossing, could have seen the flagman on the street with his flag, and within view of appellant, until she came to the point where the accident occurred, and that if she had looked attentively she could have seen the flagman waving his flag to give warning before she came to Mill street, about 100 feet from the crossing.

It is argued by counsel that the finding of the jury of the ultimate fact that appellant, in approaching the crossing, exercised all the care ordinarily exercised by prudent persons under similar circumstances, must be regarded as a determination of the question of contributory negligence by the jury. Where, upon the facts found, two or more inferences may be drawn therefrom, the finding of such ultimate fact by the jury is proper. *Cincinnati, etc., R. Co.* v. *Grames,* 136 Ind. 39. But where the jury find the facts, in-

forming the court exactly what was done and what was not done by the injured party, and the court can, as a matter of law, adjudge that the injured party was or was not guilty of contributory negligence, the finding of such ultimate fact by the jury must give way to the findings of such specific facts. *Towers* v. *Lake Erie, etc., R. Co.*, 18 Ind. App. 684; *Smith* v. *Wabash R. Co., supra; Cleveland, etc., R. Co.* v. *Moneyhun*, 146 Ind. 147; *Board, etc.,* v. *Bonebrake*, 146 Ind. 311.

Taking the specific facts found, we cannot say that they are such as warrant the finding of such ultimate fact by the jury. Such a conclusion is not consistent with the particular facts found. When the jury find precisely what the complaining party did and what she did not do, as in this case, the question of her negligence becomes one of law, and the jury's conclusion must give way. The rule announced in *Cincinnati, etc., R. Co.* v. *Grames, supra*, is not questioned, but it has no application to the case at bar. Where the jury returns a general verdict, they are required to find, and do find, the ultimate fact as to the care exercised by the injured party, and, if there is some evidence to support such a conclusion, it must stand without reference to what an appellate tribunal may think about the preponderance of the evidence. What the injured party did in such case is concluded by the jury from all the evidence, and, when there is some evidence from which the jury can say that the complaining party acted as a reasonably prudent person would act under like circumstances, such conclusion must stand. *Louisville, etc., R. Co.* v. *Williams*, 20 Ind. App. 576. But when the jury return a special verdict, and state, as facts, what the complaining party did, and there can be but one conclusion drawn from such facts, it is the duty of the court to state such conclusion as matter of law. The cases holding a railroad company

liable where the traveler has been misled by some affirmative act of a flagman are not controlling in the case at bar. It is held that, where the company is required to close a gate upon the approach of trains, the open gate is an invitation to cross, and the person approaching the crossing has a right to rely upon the invitation, but even then he is not excused from the use of some care to avoid injury. *Pennsylvania Co.* v. *Stegemeier,* 118 Ind. 305. But in the case at bar appellant relies upon the fact that the flagman was not at his usual place, and that because he was not there she did not see him. She does not rely upon having been misled by some affirmative act of his. *Smith* v. *Wabash R. Co., supra; Cadwallader* v. *Louisville, etc., R. Co.,* 128 Ind. 518.

It is true that a traveler approaching a crossing has a right to presume that the law will be obeyed, but in acting upon that presumption he is bound to exercise due care, under the circumstances. He has no right to rely entirely upon receiving the warning signals required by law, and approach the crossing without looking and listening for the approach of trains. In determining the conduct of the complaining party in approaching a crossing, the jury have the right to take into consideration the absence of statutory signals, but the absence of such signals does not excuse such party from the exercise of due care. *Miller* v. *Terre Haute, etc., R. Co.,* 144 Ind. 323; *Baltimore, etc., R. Co.* v. *Conoyer,* 149 Ind. 524; *Pennsylvania Co.* v. *Stegemeier, supra; Louisville, etc., R. Co.* v. *Williams, supra.* Taking the specific finding of facts as to what appellant did as she approached the crossing, and the further findings of the jury that if she had listened attentively she could have heard the approaching train, and that if she had looked attentively she could have seen the flagman waving his flag to give

warning, under the rules declared in the cases above cited we can but conclude that appellant was guilty of negligence proximately contributing to her injury.

The third paragraph of complaint seeks to recover for a wilful injury. It is charged in this paragraph that appellee caused its train to approach and pass over the crossing "at a rate of speed of twenty-five miles per hour, in known and purposed violation of the speed ordinance of the city of Tipton," that appellee "wilfully failed and omitted to sound the whistle of said locomotive for said street crossing," and "wilfully omitted to maintain a flagman at said crossing," that the flagman was "wilfully away from his post of duty and wilfully failed to warn the plaintiff of the approach of said train;" that appellee "wilfully caused said locomotive and train of cars to come into close proximity to said horse and plaintiff while then and there about to cross said railroad at said point," and "then and there and thereby wilfully and illegally and in known and purposed violation of the statute, * * * frightened said horse, * * * and thereby wilfully and illegally, as aforesaid, caused him to quickly turn round and upset said buggy in which plaintiff was riding," causing her injury,— "all of which said wounds and injuries herein mentioned were received by her without any fault or negligence on her part." The complaint does charge that a number of acts were wilfully done, but it does not charge that appellee wilfully injured appellant. Because appellee wilfully failed to sound the whistle, and wilfully ran the train at an unlawful speed, and the flagman was wilfully away from his post of duty, and the other acts enumerated were wilfully done, it does not necessarily follow from the pleading that there was any intention to injure anyone. The plead-

ing charges that certain acts were done wilfully, and concludes that because of these wilful acts appellee· wilfully injured appellant. It is not shown that at the times these wilful acts were done, appellee's employes had any knowledge that appellant or anyone else was near the crossing. The paragraph does not charge that appellant's horse was purposely and wilfully frightened by the servants of appellee, nor are the facts alleged such that such an inference can be drawn. Thus, it has been said: "It is only necessary to charge, in a complaint which seeks redress for a wilful injury, that the injurious act was purposely and intentionally committed, with the intent wilfully and purposely to inflict the injury complained of." *Gregory* v. *Cleveland, etc., R. Co.*, 112 Ind. 385. It is true that the unlawful intent involved in a wilful act may be either actual or constructive, but there are no facts averred in this paragraph which show that there was either an actual or constructive intent to injure appellant or to injure anyone else at the time of the occurrence pleaded. The engineer may have omitted to sound the whistle either from forgetting it or from thinking it unnecessary, and, in either case, so far as this pleading goes, such omission is nothing more than negligence. A paragraph of complaint in *Chicago, etc., R. Co.* v. *Hedges*, 105 Ind. 398, very similar to the one under consideration, was held to charge no more than negligence, the court saying: "Notwithstanding the frequent use of the words 'purposely' and 'wilfully,' the pleading does not charge that the defendant purposely or wilfully killed the intestate, or purposely or wilfully ran the train upon him, or purposely or wilfully caused it to be run upon him. The allegations amount to no more than a charge of killing through negligence." In the case of *Conner* v. *Citizens Street R. Co.*, 146 Ind. 430, the court

said: "The substance of the rule as established by the cases to which we have referred is, that to entitle one to recover for an injury without showing his own freedom from contributory fault, the injurious act or omission must have been purposely and intentionally committed, with a design to produce injury, or it must have been committed under such circumstances as that its natural and reasonable consequence would be to produce injury to others, the actor having knowledge of the situation of those others." In *Cleveland, etc., R. Co.* v. *Miller*, 149 Ind. 490, it was said: "The liability of appellant, under the circumstances in this case, must be tested or measured by the acts or conduct of its employes in control of the engine after they became aware that the deceased was approaching the crossing where the collision occurred. *Terre Haute, etc., R. Co.* v. *Graham*, 95 Ind. 286." It is true it is averred that the particular street is a much traveled street, but there are no averments from which it can be inferred that the crossing and surroundings were of such a character that the natural and probable consequence of running a train over the crossing at a high rate of speed and without sounding the whistle would result in an injury. It cannot be said that the conduct of appellee's servants shows an aggressive wrong. The most that can be said of the pleading is that it avers simply acts of nonfeasance. Construing this paragraph from the specific statement of facts, and not from its general averments, we must conclude that its averments as to the cause of the injury, notwithstanding the epithets cast into it, do not show any wilful or intentional wrong. *Ivens* v. *Cincinnati, etc., R. Co.*, 103 Ind. 27; *Louisville, etc., R. Co.* v. *Schmidt*, 106 Ind. 73; *Louisville, etc., R. Co.* v. *Bryan*, 107 Ind. 51; *Parker* v. *Pennsylvania Co*, 134 Ind. 673; *Miller* v. *Miller*, 17 Ind. App.

605; *Chicago, etc., R. Co.* v. *Nash,* 1 Ind. App. 298. As we construe the third paragraph of complaint, the issue of a wilful injury is not presented. There is no error in the record. Judgment affirmed.

Comstock, J., took no part in this decision.