SOUTHERN RAILWAY COMPANY ET AL. *v.* McNEELEY.

[No. 6,622. Filed June 10, 1909.]

1. PLEADING.— *Complaint.— Railroads.— Wilful Injury.—* A complaint alleging that defendant railroad company and certain of its servants "wilfully" did certain acts causing injuries to the plaintiff, without alleging that defendants "intended wilfully and purposely to inflict the injury complained of," is bad on demurrer, amounting merely to a charge of ordinary negligence. pp. 127, 138, 139.

2. TRIAL.—*Procedure.—Pleading.—Foreign Decisions and Laws.— Extraterritorial Effect.—*The statutes and decisions of a foreign state relative to pleading, proof, and other matters of procedure have no extraterritorial effect, the laws and decisions of the state in which the trial is held governing in such matters. p. 135.

From Superior Court of Vanderburgh County; *Alexander Gilchrist,* Judge.

Action by E. Bert McNeeley against the Southern Railway Company and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

*Alexander P. Humphrey, Edward P. Humphrey, John D. Welman, C. A. DeBruler* and *G. R. DeBruler,* for appellants.

*Thomas W. Lindsey, W. M. Wheeler* and *R. E. Roberts,* for appellee.

ROBY, P. J.—Action by appellee against the Southern Railway Company and others for damages sustained by him in the collision of two passenger-trains, upon one of which he was riding.

The complaint is in two paragraphs, demurrers to each of which were overruled. The cause was tried by a jury. At the conclusion of the evidence the judge gave a peremptory instruction to find for the defendants upon the first paragraph of complaint, and the correctness of such action is challenged by a cross-assignment of error. The court also instructed the jury to return a verdict upon the second paragraph of the complaint in favor of the defendant Evans, and submitted the case to them as to the Southern Railway Company, William H. Beatty and James Buchanan, against whom a verdict of $2,000 was returned and judgment was rendered thereon.

The first question for decision is whether the court erred in overruling the separate demurrers of said defendants to the second paragraph of complaint. This pleading is 1. so long, and the facts stated are so involved and connected, that a summary thereof must necessarily contain many omissions.

It is alleged that the appellant railway company, on December 25, 1904, owned and operated a single-track railroad, over which it ran two certain passenger-trains, known as No. 1 and No. 2; that No. 1 left St. Louis at 10:10 o'clock p. m. of said day, and No. 2 left Louisville at 10:15 o'clock p. m. of said day; that the regular meeting place of said trains was at Belmont, Illinois, a point intermediate between the cities named; that No. 1 had the right of way, and it was the duty of No. 2 to take the siding when they met; that the defendant Evans was in the service of said railway company as its train dispatcher, controlling and directing the movement of said trains; that the defendants Beatty and Buchanan were respectively engineer and conductor in charge of train No. 1; that Brown's Crossing was a station on said line in charge of a telegraph operator, and at that point there was a semaphore operated by him; that the appellee was a passenger on No. 2, but had, at the time of the collision hereafter referred to, left the place in the coach pro-

vided for passengers, and was, with the consent of the engineer and conductor, riding upon the locomotive engine which drew said train. The different duties of the employes named, their full knowledge of the facts, and other averments of a general nature, are scattered throughout the pleading. It is alleged that said train dispatcher changed the meeting place of said trains, and directed both trains to run thirty minutes late between Brown's Crossing and Princeton, Indiana; that No. 2, as he knew, was more than thirty minutes late at that time; that it was his duty to deliver the meeting order first to the train having the right of way, but that he delivered said order to train No. 2, and did not notify those in charge of train No. 1 thereof, by reason of which the two trains, one running at forty and one at sixty miles an hour, met in a head-on collision in which plaintiff suffered the injuries complained of; that the act of the train dispatcher in causing said trains to meet was wilfully and purposely done; that the telegraph operator at Brown's Crossing knew that No. 2 was running past the scheduled place of meeting before No. 1 reached his said station; that it was his duty to notify the persons in charge of No. 1 of such fact, and to hold said train at said station, but that he set the semaphore to show a clear track, and told the conductor of the train that everything was all right for said train to proceed; that it was the duty of said operator to report to Mt. Carmel, Illinois, the passage of train No. 1, but that he wilfully and purposely violated the rule requiring him to make such report; that he wilfully and purposely signaled said train, and gave the information to the conductor aforesaid; that it was the duty, under the rules of the company, of said Beatty and Buchanan, in charge of train No. 1, to wait three minutes at Belmont, the original meeting place, and three minutes at Maud Station, a station seven and two-tenths miles distant from Brown's Crossing, but that they wilfully and purposely ignored said rule, and the collision took place one-half mile east of Maud Station. This paragraph of com-

plaint covers sixteen printed pages of appellant's brief, and the synopsis herein made is, as before stated, necessarily incomplete.

A wilful injury involves a deliberate purpose not to discharge some duty necessary to the safety of a person or property of another, which duty the person owing it has assumed by contract, or which is imposed upon him by operation of law. 1 Thompson, Negligence (2d ed.), §20; *Terre Haute, etc., R. Co. v. Graham* (1884), 95 Ind. 286, 48 Am. Rep. 719. It is differentiated from negligence, by the fact that the latter arises from inattention or thoughtlessness, while the former cannot exist without purpose or design. *Pittsburgh, etc., R. Co. v. Ferrell* (1907), 39 Ind. App. 515, and authorities cited on page 534.

The complaint, to be sufficient, must charge that the injurious act was purposely and intentionally committed. As a matter of principle this should be sufficient; but it was first stated in *Gregory v. Cleveland, etc., R. Co.* (1887), 112 Ind. 385, that it is "necessary to charge in a complaint which seeks redress for a wilful injury, that the injurious act was purposely and intentionally committed with the intent wilfully and purposely to inflict the injury complained of." The cases have quite uniformly adopted the rule before stated, and as a matter of pleading it may be regarded as "established law" that the complaint should contain such averment. *Pittsburgh, etc., R. Co. v. Ferrell, supra,* and cases cited on page 529. Whatever confusion has arisen with regard to the subject is attributable to a failure to differentiate between the formal averment necessary to a charge of wilful injury, and the facts by which such averment may be supported.

It is important to understand what is meant in the use of the words "wilful," or "wilfully," as used in the complaint. It is "the quality of being wilful; obstinacy; stubbornness; perverseness; voluntariness." *Dull v. Cleveland, etc.,*

*R. Co.* (1899), 21 Ind. App. 571. It was said in *In re Young & Harston's Contract* (1885), 31 Ch. Div. 168, that wilful "is a word of familiar use in every branch of law, and although in some branches of the law it may have a special meaning, it generally, as used in courts of law, implies nothing blamable, but merely that the person of whose action or default the expression is used, is a free agent, and that what has been done arises from the spontaneous action of his will. It amounts to nothing more than this, that he knows what he is doing, and intends to do what he is doing, and is a free agent." We quote the following from *Fuller* v. *Chicago, etc., R. Co.* (1871), 31 Iowa 187: "It is said by defendant's counsel that the word 'wilfully' implies the idea of malice of a mild kind, an evil intent without excuse. Such may be its meaning in indictments and criminal statutes. But it is not to be so understood here. The word means 'obstinately, stubbornly; with design; with a set purpose,' and this definition must be applied to it where it occurs in the statute under consideration." *Pittsburgh, etc., R. Co.* v. *Ferrell, supra,* pages 525, 526; Bishop, Crim. Law (3d ed.), 420.

Proof that a wrong act was purposely done charges the doer with the intention to produce the natural consequences of such act. This doctrine is most frequently invoked in criminal law.

"Every act producing an unintended result must, when evil, be measured either by the intent or the result. The common-law rule measures it substantially by the latter, holding the person guilty of the thing done where there is any kind of legal wrong in the intent, the same as though specifically intended." Bishop, Crim. Law (3d ed.), 411.

"The evil of the intent and the evil of the act added together constitute the evil punished as crime. The only peculiarity of the doctrine is in its teaching that the intent and act which constitute the sum need not be the natural or usual accompaniment of each other provided they did not

in fact accompany each other in the particular case.''
Bishop, Crim. Law (3d ed.), 414.

The supreme court of Massachusetts, applying this doctrine in a civil suit for personal injury averred to have been wilfully caused, said in *Aiken* v. *Holyoke St. R. Co.* (1903), 184 Mass. 269, 68 N. E. 238: ''The law is regardful of human life and personal safety, and if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a wilful and intentional wrong. It is no defense to a charge of manslaughter for the defendant to show that, while grossly reckless, he did not actually intend to cause the death of his victim. In these cases of personal injury there is a constructive intention as to the consequences, which, entering into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes, by reason of a reckless disregard of probable consequences, a wilful wrong. That this constructive intention to do an injury, in such cases will be imputed in the absence of an actual intent to harm a particular person, is recognized as an elementary principle in criminal law. It is also recognized in civil actions for recklessly and wantonly injurying others by carelessness.''

In *Palmer* v. *Chicago, etc., R. Co.* (1887), 112 Ind. 250, 255-257, it is said: ''The authorities, from the earliest years of the common law, recognize the rule that there may be a wilful wrong without a direct design to do harm. This principle has been applied to furious driving, to collisions between vessels, to the taking of unruly animals into crowds, to carelessly laying out poison for rats, to want of caution toward drunken persons and to the careless casting of logs and the like upon highways. 1 Hale, Pleas of the Crown (1st Am. ed.), 475, and authorities n. 4; 4 Blackstone's Comm., 182. Doctor Wharton gives full recognition to this

principle and shows its application to railroads. Wharton, Homicide, §§80, 87, 94, 155. Mr. Bishop very fully and ably discusses the question and cites many authorities. In the course of his discussion he says: 'There is little distinction, except in degree, between a positive will to do wrong and an indifference whether wrong is done or not. Therefore carelessness is criminal; and, within limits, supplies the place of the direct criminal intent.' 1 Bishop, Crim. Law [7th ed.], §313. In another place this author says: 'If a man neglects obvious means to learn what will be the probable consequences of his act, and so proceeds rashly, the doctrine of carelessness already discussed applies to the case, and he is not excused.' 1 Bishop, Crim. Law [7th ed.], §324. These authorities declare and illustrate a fundamental principle of the criminal law, long established, and long maintained without dissent, and we cannot affirm that where the question is one of mere civil liability a more lenient rule prevails in favor of the wrongdoer. Nor do the decided cases justify the conclusion that a more favorable rule prevails in civil cases. Judge Cooley thus states the general rule: 'Where the conduct of the defendant is wanton and wilful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts irrespective of the fault which placed the plaintiff in the way of such injury. The fact that one has carelessly put himself in a place of danger is never an excuse for another's purposely or recklessly injuring him. Even the criminal is not out of the protection of the law.' Cooley, Torts [2d ed.], *674. Mr. Beach says: 'It is a general rule that when the defendant's negligence is wilful, contributory negligence is not a defense, and, accordingly, it is held that a mere technical trespass is not such an offense as to deprive the trespasser of his right to recover damages for an injury which he suffers through the wilful negligence

of another.' Beach, Contrib. Neg., 53.'' See *Pittsburgh, etc., R. Co.* v. *Ferrell,. supra.* There can be no case conceived where the defendant is guilty of murder or manslaughter that he would not also be civilly liable. It is not, however, necessary that one commit a crime in order to become liable for wilfulness. The act or omission out of which such liability arises need only be *quasi* criminal. A *quasi* crime is an offense not constituting a crime or misdemeanor at law, but which is in the nature of a crime.

''A class of offenses against the public which have not been declared crimes, but wrongs against the general or local public which it is proper should be repressed or punished by forfeitures and penalties.'' Bouvier's Law Dict., title, *Quasi* Crimes. It therefore may be sufficient to justify an inference and finding of an intention to cause the injury that followed a wrongful act, when it is found that such act was purposely done; and to support a charge that such act was purposely and wilfully done it is not necessary to show in a civil action, such as the one at bar, that the act or omission was done or omitted with premeditation or malice.

In the early case of *LaFayette, etc., R. Co.* v. *Adams* (1866), 26 Ind. 76, 78, 79, it was said by Judge Frazer that ''it is well settled that where the negligence of the defendant is so gross as to imply a disregard of consequences, or a willingness to inflict the injury, the plaintiff may recover though he be a trespasser, or did not use ordinary care to avoid the injury. Recklessness in the management of the train is such gross negligence as is utterly regardless of consequences.'' *Pittsburgh, etc., R. Co.* v. *Ferrell, supra.* The doctrine thus clearly expressed has never been doubted nor denied. Judge Mitchell later said, in *Louisville, etc., R. Co.* v. *Bryan* (1886), 107 Ind. 51, 53: ''To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and

a willingness to inflict the injury complained of.'' The same substantial declaration is contained in the following cases: *Belt R., etc., Co.* v. *Mann* (1886), 107 Ind. 89, 93; *Pennsylvania Co.* v. *Sinclair* (1878), 62 Ind. 301, 306, 30 Am. Rep. 185; *Palmer* v. *Chicago, etc., R. Co.* (1887), 112 Ind. 250; *Louisville, etc., R. Co.* v. *Ader* (1887), 110 Ind. 376, 380; *Parker* v. *Pennsylvania Co.* (1893), 134 Ind. 673, 23 L. R. A. 552; *Conner* v. *Citizens St. R. Co.* (1896), 146 Ind. 430, 435; *Cleveland, etc., R. Co.* v. *Miller* (1898), 149 Ind. 490; *Cincinnati, etc., R. Co.* v. *Cooper* (1889), 120 Ind. 469, 474, 6 L. R. A. 241, 16 Am. St. 334; *Brannen* v. *Kokomo, etc., Gravel Road Co.* (1888), 115 Ind. 115, 7 Am. St. 411; *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, 387; *Indianapolis St. R. Co.* v. *Taylor* (1902), 158 Ind. 274; *Brooks* v. *Pittsburgh, etc., R. Co.* (1902), 158 Ind. 62; *Union Traction Co.* v. *Lowe* (1903), 31 Ind. App. 336; *Overton* v. *Indiana, etc., R. Co.* (1891), 1 Ind. App. 436; *Barr* v. *Chicago, etc., R. Co.* (1894), 10 Ind. App. 433, 436; *Dull* v. *Cleveland, etc., R. Co.* (1899), 21 Ind. App. 571; *Pittsburgh, etc., R. Co.* v. *Judd* (1894), 10 Ind. App. 213, 222; *Louisville, etc., R. Co.* v. *Cronbach* (1895), 12 Ind. App. 666, 673; *Miller* v. *Miller* (1897), 17 Ind. App. 605; *Hancock* v. *Lake Erie, etc., R. Co.* (1898), 21 Ind. App. 10; *Indianapolis, etc., R. Co.* v. *Petty* (1868), 30 Ind. 261; *Carter* v. *Louisville, etc., R. Co.* (1884), 98 Ind. 552, 556.

One charge contained in the complaint is, in substance, that appellant railway company's train dispatcher ordered two of its trains, one running at sixty miles an hour and the other at forty miles an hour, to pass over the same track in opposite directions at the same time. Such an order might have been negligently given and it might have been wilfully given. The pleader avers that it was wilful. The demurrer admits the averment to be true. It is also alleged that a station agent, who knew the facts, and whose duty it was to notify those in charge of train No. 1, wilfully withheld information thereof from them, and signalled them forward

to collision. It is alleged that the engineer and conductor disregarded established rules, by an observance of which the collision might have been averted. It is also alleged that they acted wilfully and intentionally therein. All of these facts are admitted by the demurrer. The averments of the pleading show that the acts complained of were done and omitted by the train dispatcher while within the line of his employment, bringing the case within the proposition that "a corporation is responsible for the acts of an agent performed while engaged in the discharge of duties within the general scope of his agency, although the particular act was wilful and was not directly authorized." *Pennsylvania Co.* v. *Weddle* (1885), 100 Ind. 138, 140.

The pleading does not contain an averment to the effect that the defendant "intended wilfully and purposely to inflict the injury complained of." In lieu thereof it is set up that the accident occurred in the state of Illinois, and

2.  that by the law of that state, as declared by the decisions of its courts, such averment is not necessary,

the evident idea being that the Illinois decisions govern. In this the plaintiff is mistaken. *Smith* v. *Wabash R. Co.* (1895), 141 Ind. 92. This conclusion results in the reversal of the cause. The statute contains a provision as follows: "But the court shall not reverse the proceedings any further than to include the first error." §703 Burns 1908, §661 R. S. 1881. This implies a duty to reverse on the first error. The plaintiff went to trial upon a complaint in two paragraphs. The first paragraph is admittedly good, but at the conclusion of the evidence the court directed a verdict for the defendant. Had a demurrer been sustained to this paragraph and cross-errors assigned, it would be necessary to consider the sufficiency of the pleading, but it is not necessary to take up the sufficiency of the evidence at this time, a reversal being already determined. If the appellee chooses to amend the second paragraph and the cause is retried, he will be entitled to the benefit of whatever evi-

dence he may produce tending to sustain the allegations of the first paragraph, and upon that evidence a final judgment will be rendered. To discuss the legal propositions, which it is claimed arose upon the evidence adduced at the last trial, is useless, since the conclusions reached do not become the law of the case, except when the evidence on the second trial is substantially identical. *Gipe* v. *Pittsburgh, etc., R. Co.* (1908), 41 Ind. App. 156; *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368; *Midland Steel Co.* v. *Citizens Nat. Bank* (1904), 34 Ind. App. 107; *Thuis* v. *City of Vincennes* (1905), 35 Ind. App. 350.

These questions of law are close and difficult. Whether one who holds a ticket between two points and takes passage upon a passenger-train ceases to be a passenger by reason of being upon the engine; whether he is guilty of contributory negligence as a matter of law; whether the question is for the jury upon the facts; whether he is wholly exonerated by the conditions—are propositions upon which no opinion is expressed. Loose expression creates only confusion, and is to the detriment of all the parties and the public; therefore the sole question decided is that the second paragraph of complaint was subject to demurrer, for the reasons stated.

Hadley, C. J., and Watson, J., concur.

COMSTOCK, J.—Appellee brought this action against the appellants to recover damages alleged to have been sustained by the collision of two passenger-trains, upon one of which appellee was riding.

The complaint is in two paragraphs. The first alleged that the plaintiff was a passenger for hire, and that the defendants negligently ran said passenger-trains together. The second alleged that the plaintiff was riding in the cab of the locomotive engine with the knowledge of the engineer and conductor, and attempted to allege that the defendants wilfully and purposely injured the plaintiff by running said

passenger-trains together. The averments in each paragraph are substantially the same, except that in the first paragraph the acts and omissions are charged as negligent, while in the second they are meant to be charged as wilful.

The facts as shown by the pleadings and the evidence are as follows: Defendant railroad company was the owner and operator of a single-track railroad from Louisville, Kentucky, to St. Louis, Missouri. Said road passed through the cities of Princeton, Indiana, and Mt. Carmel, Maud Station, Belmont, Brown's Crossing and Fairfield, Illinois. Said defendant maintained telegraph offices at each of said points, and with the exception of Belmont and Maud Station, which were day offices, said telegraph offices were kept open day and night. As a part of its transportation system it operated between the aforesaid termini, at and prior to the time of the injury, two daily passenger-trains— No. 1, an east-bound train, and No. 2, a west-bound train. Belmont, Illinois, was the regular meeting place for said trains as fixed by defendant's time-tables, and they were due to meet at said point at 2:42 o'clock a. m. It was the duty of the telegraph operators to deliver to the conductor and engineer of trains, orders issued by the train dispatcher, and it was the duty of such operators to indicate by semaphore signals whether they had any orders for an incoming train. At the time the plaintiff received his injuries, the defendant Evans was in the employ of the defendant railway company as train dispatcher at Princeton, Indiana, and had charge and control of the movement and operation of all trains on said company's line between Princeton, Indiana, and St. Louis, Missouri. On the morning in question the defendant Evans discovered that said trains were behind time, and issued an order—No. 5—to both of said trains to run thirty minutes late, which order was delivered to them. Afterwards he issued a second order—No. 6—which was transmitted to the operator of the defendant company at Brown's Crossing, Illinois, for the defendants Beatty and

Buchanan, conductor and engineer in charge of train No. 1, and to the operator at Princeton, Indiana, for the train crew in charge of train No. 2, directing said trains to meet and pass at Maud Station, Illinois. Order No. 6 was delivered to the crew in charge of train No. 2, but the operator at Brown's Crossing did not deliver said order to Beatty and Buchanan, in charge of train No. 1, a superior train of the same class, and who, without any knowledge of the change of meeting place proceeded under order No. 5, until at a point a short distance east of Maud Station the two trains collided, causing the injuries complained of.

A trial was had by jury, and, upon instructions by the court, the jury found in favor of all the defendants on the first paragraph, and rendered a verdict against the appellants Southern Railway Company, Beatty and Buchanan upon the second paragraph of complaint.

The first error assigned challenges the sufficiency of the second paragraph of complaint.

The second paragraph of the complaint is framed upon the theory of wilful injury. It alleges that the collision was caused by the wilful neglect of duty of the defendants William H. Beatty, James Buchanan and Guy G. Evans, and by the wilful neglect of the telegraph operator of the defendant company at its Brown's Crossing office.

Each act is attempted to be characterized as wilful, by placing the words "wilfully, purposely and wantonly" preceding the omission or act. Evans is charged with wilfully violating the rule of the company in not delivering the meeting order to train No. 1 at Fairfield. Again he is charged with wilfully or purposely neglecting to hold train No. 2 at Mt. Carmel. The operator at Brown's Crossing is charged with wilfully and purposely changing the signal from red to white. Beatty and Buchanan are charged with wilfully and purposely failing to observe their order to run thirty minutes late.

The terms "wilfully and purposely" are applied to said omissions or acts of some of the defendants, which acts or omissions in themselves are negligent. The various allegations against the several defendants amount to no more than the allegation of negligence. To be good as a complaint for wilful injury, it should show by some consistent form of averment that the injurious act was purposely done, with the intent on the part of the doer to inflict wilfully and purposely a particular injury of which complaint is made. Wilfulness is a desire or intent to produce a certain result. *Pittsburgh, etc., R. Co.* v. *Ferrell* (1907), 39 Ind. App. 515, 517, and cases cited. Wilfulness and negligence are held inconsistent. Purpose or design is foreign to negligence. *Parker* v. *Pennsylvania Co.* (1893), 134 Ind. 673.

Where a negligent act is attempted to be characterized as wilful, by placing the words "wilfully, purposely or wantonly" before the omission or act and such acts or omissions are in themselves mere negligence, such charge is inconsistent with itself, and the use of such words adds nothing to the charge. *Cleveland, etc., R. Co.* v. *Asbury* (1889), 120 Ind. 289; *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398, 402, 403, and cases cited; *Louisville, etc., R. Co.* v. *Schmidt* (1886), 106 Ind. 73; *Dull* v. *Cleveland, etc., R. Co.* (1899), 21 Ind. App. 571; *Hancock* v. *Lake Erie, etc., R. Co.* (1898), 21 Ind. App. 10; *Miller* v. *Miller* (1897), 17 Ind. App. 605.

It is also insisted that said paragraph is deficient for additional reasons. These it is not necessary to consider.

The complaint avers that the common law prevailed in Illinois at the time plaintiff received his injuries, and, in effect, avers that, under the decisions of the supreme 1. court of Illinois, presumptions from certain acts of one charged with wilful injury are stronger than in Indiana, and that in the case at bar, being brought in Indiana for a cause that originated in Illinois, the law of the state of Illinois should apply. We think this claim can

not be allowed. The law of a foreign state can have no extraterritorial force when not in harmony with our decisions. The action is governed as to the rules of pleading, evidence, presumptions and burden of proof by the rules of law of this State. *Smith* v. *Wabash R. Co.* (1895), 141 Ind. 92; *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470; *Baltimore, etc., R. Co.* v. *Ryan* (1903), 31 Ind. App. 597, and cases cited.

The court erred in overruling appellant's demurrer to said second paragraph.

The questions raised by assignment of cross-errors may not arise upon another trial, and are not, for that reason, considered.

Rabb and Myers, JJ., concur.

Judgment reversed, with instructions to sustain the demurrer to the second paragraph of complaint.