# THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* PACE, ADMINISTRATOR.

[No. 22,115.   Filed April 17, 1913.]

1. APPEAL.—*Assignment of Errors.—Questions Presented.—Briefs.* —No question. is presented on alleged error in overruling the demurrer to a complaint, where neither the demurrer nor its substance is set out in appellant's brief, and no defect or cause for demurrer is pointed out therein. p. 416.

2. APPEAL.—*Briefs.—Statement of Record.—Sufficiency.*—Where, in support of alleged error in overruling its motion for judgment *non obstante,* appellant set out in its brief what is claimed to be the substance of the interrogatories and answers thereto in narrative form, and the correctness of such recital is not challenged by appellee, the court will accept same as correct. p. 416.

3. RAILROADS.—*Crossing Accidents.—Negligence.—Unlawful Rate of Speed.*—The running of a train through a town in violation of its speed ordinance, or of the statute, is negligence *per se.* p. 423.

4. RAILROADS.—*Crossing Accidents.—General Verdict.—Scope.*—In an action to recover for death in a railroad crossing accident, where the complaint charged negligence in operating the train in violation of the speed ordinance of a town and in failing to give warning or signal of the approach of the train to the crossing as required by statute, a finding that defendant was negligent *per se* in violating such ordinance, or the statute, would be embraced in a general verdict for plaintiff. p. 423.

5. RAILROADS.—*Crossing Accidents.—Wilful Injury.—Answers to Interrogatories.*—In an action for the death of plaintiff's intestate at a railroad crossing, answers to interrogatories showing that the engineer intentionally or purposely ran against the horse and buggy of deceased for the purpose of injuring him, or his wife, or his property, are nullified by other answers showing that the engineer had no actual notice of the existence of a speed ordinance, and had run over the crossing for two or three years at a high speed, and that he did not see the horse or buggy of deceased, since there can be no direct wilfulness and intentional injury where there is a lack of knowledge, unless the act is done with utter disregard as to the rights of others, or is so fatally mischievous that injury may be reasonably apprehended, or is done with a wicked intent to injure. p. 423.

6. RAILROADS.— *Crossing Accidents.— Negligence.— Contributory Negligence.—Duty to Stop and Look.*—Although, in an action for the death of plaintiff's intestate at a railroad crossing, the

special findings establish negligence *per se* on the part of defendant, the verdict for plaintiff cannot stand, where it further appears that decedent did not stop for the purpose of looking or listening for an approaching train, and the facts and circumstances disclosed by the findings were such as to make it his duty, as a matter of law, to stop, in order to render either seeing or hearing effective.   p. 424.

From Randolph Circuit Court; *Joseph G. Leffler,* Special Judge.

Action by William B. Pace, administrator of the estate of Jesse Pace, deceased, against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*J. W. Macy, A. L. Nichols* and *A. L. Bales,* for appellant.
*F. S. Caldwell* and *W. G. Parry,* for appellee.

MYERS, C. J.—This was an action by appellee against appellant by complaint in two paragraphs, one alleging a negligent and the other a wilful killing of appellee's decedent. Each paragraph was unsuccessfully assailed by demurrer, and these rulings are assigned as error.

No question is presented on these assignments for the reason that neither the demurrers nor their substance are set out, nor is there the slightest reference in the briefs as to what was the cause of demurrer, nor, is there attempted to be pointed out any weakness of either paragraph of the complaint.

The third assignment is addressed to the alleged error of the court in overruling the motion of appellant for a judgment *non obstante.* The interrogatories or answers, claimed to be 92 in number, are not set out in the briefs. Appellant sets out what it claims to be the substance of the interrogatories and the answers thereto in narrative form. Appellee refers to the interrogatories and answers by number, and without setting out any

of them, claims that certain of them referred to by number, are in conflict with others referred to by number, and nullify each other. That as a whole they do not negative the existence of facts admissible in evidence under the issues, which would nullify the force of some of them, especially as to obstructions, seeing and hearing, looking and listening, the speed of the train, locations as related to the speed of the train which killed appellee's decedent, etc. Appellee does not challenge the correctness of the recital of the findings, and we therefore take them as stated. The motion is to be considered in the light of the complaint, the answer, a general denial, and the findings themselves.

The negligence charged in the first paragraph is that the defendant is a corporation, owning, controlling and operating a line of railroad from Cleveland, Ohio, to Indianapolis, Indiana, running through the incorporated town of Farmland, Indiana, from east to west, and that the town was duly incorporated on and prior to December 7, 1906; that there was at that time an ordinance enacted existing and then in full force, regulating the speed of railroad trains within its limits, by the terms of which it was made unlawful for appellant to operate its trains over its road, within the corporate limits of said town at a higher rate of speed than eight miles an hour, and penalty was prescribed therein; that Farmland was at that time a populous town of 1500 people; that its streets, running north and south, were crossed by appellant's line of railroad at nearly right angles; and especially Main street, near the center of the town and along which it is alleged, were located, its business houses, and where its population dwelt; that along this street the people of the town and surrounding country were continually passing and repassing, and crossing over appellant's line of road; that on December 7, 1906, and prior thereto, there was a warehouse and elevator on the east side of Main street, and immediately south of appellant's railroad,

the west end of which extended out to, and was flush with, the east line of said street in such a manner as to obstruct the view and sound of an approaching train from the east, and that appellant had negligently set box cars on a side track south of the main track, and extending out to the east line of said street so as to further obstruct the view to the east; that because of these obstructions it was impossible for persons approaching the railroad on Main street from the south, to see an approaching train from the east until they had reached a point within fifteen feet of the main track; that Jesse Pace, appellee's decedent, and his wife who lived north of the town were on Main street south of said railroad, and started home together on Main street; that they were in a buggy driven by a well-broken, and gentle horse and approached the railroad from the south; that they drove in a prudent and careful manner as they approached the crossing, and looked both ways, and listened for approaching trains, but saw and heard none; that there was at that hour no train due; that as they approached the track they continued to look and listen for approaching trains, until the horse was about entering upon the main track, when suddenly and without warning, the defendant, by its agents and servants, ran its locomotive and cars over its track from east to west at an unlawful rate of speed, and contrary to, and in violation of said speed ordinance, to wit, 60 miles an hour, and it is alleged also, that appellant negligently failed to sound the whistle of the engine at a distance of 80 to 100 rods as required by the statute; that the decedent and wife relying upon appellant to operate its engine in a careful and lawful manner, and at a rate of speed not in excess of that fixed by the ordinance, approached the railroad, and just as the horse was about to enter upon the tracks, from the east, but too late to avoid a collision, the horse entered upon the track, and was immediately struck by defendant's locomotive, the buggy destroyed, and Pace and wife instantly killed.

It is alleged that all these acts were negligently and carelessly done, and that the decedent and wife would not have been so struck and killed if appellant had operated its locomotive and train of cars at the lawful speed of eight miles per hour.

The second paragraph alleges the same facts as the first, save, that it is alleged in this paragraph that all of the alleged wrongful acts were done and performed by the appellant purposely and wilfully, and that they were done with the purpose and intent of killing Jesse Pace, and that his death was wholly the result of the wilful misconduct of appellant.

The substance of the interrogatories and answers as stated in appellant's brief is claimed to be as follows: That the accident occurred on appellant's railway where it crosses Main street in the town of Farmland; the street at that point was 80 feet wide from property line to property line, with sidewalks 14 feet wide on each side of that part of the street which lies south of the appellant's road; that there was an interurban railway track running north and south along the center of Main street, and crossing appellant's road at right angles. Main street itself ran due north and south at this point, crossing the railway at right angles; that appellant maintained three tracks at this crossing, the main track lying between the other two; that south of the main track, and parallel thereto, ran a track called the commercial, or house track, and that north of the main track, and parallel therewith, ran a track called the passing switch, or siding; that the distance between the south rail of the main track and the north rail of the commercial or house track was 18 feet, and the distance between the south rail of the main track, and the south rail of the commercial or house track was 22 feet, 8 inches, at the Main street crossing; that there was an elevator on the east side of Main street at the crossing which abutted on the Main street sidewalk, the north line of which was 9⅔ feet south of the

south rail of the commercial, or house track; that at this time there were two box cars standing on the commercial or house track, the first about 180 feet east of the east line of Main street, the west end of the second car, about 3 feet east of the east property line of Main street, and that aside from these two box cars, there were no obstructions to the view between the elevator and the main track; that with the above location of the second box car Pace could have seen the train approaching from the east, at a distance of 190 feet, had he looked eastward when he was over the south rail of the house tracks; that he could have seen the train about 240 feet to the east, had he looked from the center of the house track, and looking eastward from the north rail of the house track, he could have seen an approaching train about 450 feet away; that Pace as he approached the railroad was driving along Main street about 10 feet west of the traction line when he was killed; that the decedent had lived 5 miles north, and ¾ mile east of Farmland for more than twenty years prior to the accident, except a few months when he lived at Emmettsville, and 15 months when he lived at Farmland, and that during the twenty years he was often at the town of Farmland, and over and about the crossing where the accident occurred; that during the time he lived at Farmland, decedent passed over the crossing almost daily; that he was familiar with the crossing at the time of the accident; that he was familiar with the location of the buildings on the east side of Main street at the time of his death; that he met his death while attempting to drive a top buggy across appellant's main track in Farmland; that the buggy in which he was riding, was enclosed with a storm front, side curtains and top, which storm front he had purchased and placed on his buggy not more than a half hour before the accident; that after the storm front was placed on the buggy, he and his wife entered the buggy, and started home, driving north on Main street toward appellant's crossing; that the storm front had no opening or

window on either side, other than slight apertures of an inch or two at the top of the side curtains, through which Pace or his wife could have looked for approaching trains; that the only opening or window in the storm front through which he could have seen an approaching train was an isinglass window, about 12x18 inches; that he drove north on Main street directly upon appellant's tracks without stopping to look or listen for an approaching train, and the evidence did not disclose whether or not he looked and listened; that he had good eyesight at the time of the accident, and that his hearing was in no way impaired; that the locomotive of the train sounded its whistle so loud and sharp about 300 feet east of the crossing as to be heard by several persons on Main street; that some of the persons who heard the train whistle called to Pace at the top of their voices to stop; that the evidence does not disclose whether or not Pace heard such persons calling, or the whistle of the locomotive; that he was unable to see the train after he had passed beyond the obstructions on the east of Main street, because of the storm front, and side curtains on his buggy; that the engineer, in charge of the engine that collided with Pace's horse and buggy, had had 27 years' experience as a railroad engineer; that he had been running an engine on appellant's railway for 15 years through the town of Farmland; that he had been regularly running an engine attached to fast trains which did not stop at Farmland; that for two or three years before the accident he had been running said fast trains through Farmland at a speed of 45 to 60 miles an hour, and that on December 7, 1906, he had no notice or knowledge that any ordinance had ever been passed by the board of trustees of the town of Farmland regulating the speed of locomotives passing through said town; that as his train approached the Main street crossing, he was seated on the right side of the engine looking forward along the main track, and did not see the horse driven by Pace, or the buggy in which Pace was riding, before the

collision; that he did not apprehend that there would be any such collision as he approached the crossing; that he intentionally or purposely ran the engine against the horse and buggy of Pace, and that he so purposely, wilfully or intentionally ran the engine against Pace's horse and buggy for the purpose of injuring either Pace or his wife, or his property; that during the years he had been running a locomotive through Farmland, he had never had a collision or other accident at the Main street crossing, prior to December 7, 1906; that Pace at the time of the accident approached appellant's track from the south, seated in a top buggy, drawn by one horse, as appellant's train approached the crossing from the east; that one or more persons warned Pace of the approach of the train about the time the horse reached the south rail of the commercial or house track, and at a distance of 25 feet from the main track, by crying loudly to him to stop; that Pace at the time of these warnings, had his horse under control. That the ordinance regulating speed of trains passing through Farmland was passed with an emergency clause, and without publication or posting, and was passed without any notice; that the ordinance provided a maximum speed of 8 miles per hour; that the locomotive which collided with Pace sounded its whistle for Farmland station, and that Pace's being in an enclosed vehicle, and the location of buildings on the east side of Main street, prevented his hearing the whistle, and the calling of persons referred to above; that being in an enclosed vehicle was what prevented Pace's hearing the warnings of persons; that Pace, when approaching appellant's tracks from the south immediately before the accident, and when he was 100 feet or more south of said tracks could have seen the box car which was standing on the south of the house track about three feet east of the east property line of Main street.

These findings do not negative the fact that the train

was run in violation of the speed ordinance, or of the statute, each of which alleged failures constitutes negligence *per se,* and would be embraced in the general verdict, under such evidence, as was admissible under the complaint. *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 115, 88 N. E. 1073, 89 N. E. 485, and cases cited. There is a finding that the engineer "intentionally or purposely ran the engine against the horse and buggy of Pace, and that he so purposely, wilfully or intentionally ran the engine against Pace's horse and buggy for the purpose of injuring Pace or his wife, or his property." But it is also found in the same connection, that the same engineer had no actual notice of the existence of the speed ordinance, and had been in the habit for two or three years of running the same train through the town, and over the crossing at a speed of from 45 to 60 miles an hour, and that as his train approached that crossing at the time of the injury "he was seated on the right side of the engine" which was moving west, "and did not see the horse driven by Pace, or the buggy in which Pace was riding, before the collision." It is at once manifest that these findings nullify each other. There can, in the nature of things, be no such thing as direct wilfulness, and purposed and intentional injury inflicted, where there is a lack of knowledge, unless the conditions are such, that the act is done with such utter unmindfulness, and disregard of the rights of others, or by a person so fatally bent on mischief as that injury may be reasonably apprehended, or with the wicked intent to injure, and evincing a purpose to do so. *Fisher* v. *Louisville, etc., R. Co.* (1897), 146 Ind. 558, 45 N. E. 689; *Parker* v. *Pennsylvania Co.* (1893), 134 Ind. 673, 34 N. E. 504, 23 L. R. A. 552; *Palmer* v. *Chicago, etc., R. Co.* (1887), 112 Ind. 250, 14 N. E. 70; *Southern R. Co.* v. *McNeeley* (1909), 44 Ind. App. 126, 88 N. E. 710, 88 N. E. 714; *Indianapolis St. R. Co.*

v. *Darnell* (1904), 32 Ind. App. 687, 68 N. E. 609; *Hancock* v. *Lake Erie, etc., R. Co.* (1898), 21 Ind. App. 10, 51 N. E. 369.

The real question arising upon the facts recited as found, is that of claimed contributory negligence. These interrogatories and answers clearly disclose negligence *per se*, in running the train in violation of the speed ordinance, but to our minds they also show contributory negligence on the part of appellee's decedent. Upon the question of the obstructions of the freight cars and elevator alone, to hearing and seeing, reasonable men might differ, as to whether the failure to see or hear was negligent on the part of the decedent, or whether he used due care; but here we have a man acquainted with the conditions, who has voluntarily put himself in a position where it is found he could not see or hear, approaching a place of known danger, and itself an admonition of danger, so situated that the exterior obstructions of the cars and elevator building became relatively unimportant, because of this situation which rendered seeing difficult, except directly in front, if not highly improbable. The enclosed vehicle is found by the jury to have prevented his seeing after he had passed the obstructions, and the enclosed vehicle and the buildings prevented hearing the whistle, and the enclosed vehicle prevented hearing those who called. Supposing the train to have been running sixty miles an hour, or 88 feet per second, and the decedent traveling four miles an hour, or $5\frac{1}{2}$ feet per second, he would have been across the north rail of the house track when the train whistled at 300 feet, and from that point had an unobstructed view 450 feet away; the horse was under control but he did not stop; so that it appears, that it could not have been the cars, or the elevator which affected either seeing or hearing at that time, and there was safe distance remaining. But whether they did or did not, the facts here disclosed call for the

application of the rule, that situated as the decedent was, with respect to seeing and hearing, it was his duty, as a matter of law under the finding, to stop in order to render either hearing or seeing effective, and a blind disregard of that duty cannot be ignored. *Grand Trunk, etc., R. Co.* v. *Reynolds* (1911), 175 Ind. 161, 165, 92 N. E. 733, 93 N. E. 850; *Chicago, etc., R. Co.* v. *Thomas* (1900), 155 Ind. 634, 58 N. E. 1040; *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 42 N. E. 736, 32 L. R. A. 149; *Cincinnati, etc., R. Co.* v. *Butler* (1885), 103 Ind. 31, 2 N. E. 138; *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476; *Lake Erie, etc., R. Co.* v. *Moore* (1912), 51 Ind. App. 110, 97 N. E. 203; *Cleveland, etc., R. Co.* v. *VanLaningham* (1913), 52 Ind. App. 156, 97 N. E. 573; *Pittsburgh, etc., R. Co.* v. *West* (1904), 34 Ind. App. 95, 69 N. E. 1017; *Cleveland, etc., R. Co.* v. *Heine* (1902), 28 Ind. App. 163, 62 N. E. 455; *Aurelius* v. *Lake Erie, etc., R. Co.* (1898), 19 Ind. App. 584, 49 N. E. 857.

It is urged that other conditions may have existed, not disclosed by the interrogatories, such as the possible rattling of the buggy on the street, or other noises, or obstructions; but as to the latter, it is found that there were no other obstructions, and if the conditions existed as suggested by appellee, which rendered hearing impossible or ineffective or difficult, even though there were obstructions, that would only render more essential the caution of stopping in order to see or hear, or both.

The judgment is reversed with instructions to the court below to sustain appellant's motion for judgment upon the interrogatories and answers, and render judgment for appellant.

NOTE.—Reported in 101 N. E. 479. See, also, under (1, 2) 2 Cyc. 1014; (3) 33 Cyc. 976; (4) 33 Cyc. 1142; 38 Cyc. 1885; (5) 33 Cyc. 1142; 38 Cyc. 1926; (6) 33 Cyc. 1142; 38 Cyc. 1927. As to contributory negligence of persons failing to look out for train's approach, see 51 Am. Rep. 360. As to speed of train within city

limits as evidence of negligence, see 53 Am. Rep. 52. As to the duties of railroad companies to persons on or near its tracks, see 20 Am. St. 452. For the duty of a traveler approaching railway crossing as to place and direction of observation, see 37 L. R. A. (N. S.) 136.